Docket No. 88530–Agenda 24–September 2001.

SAM SARKISSIAN, As Parent and Guardian of Sonya Sarkissian, a Minor, Appellee, v. THE CHICAGO BOARD OF

 EDUCATION, Appellant.

Opinion filed July 3, 2002.

JUSTICE McMORROW delivered the opinion of the court:

There are two issues in this appeal. The threshold issue is whether an order vacating a default judgment on the ground that it is void for lack of proper service of process is an appealable order. The second issue is whether service of process was proper in this case. The appellate court held that the order vacating the default judgment was a final, appealable order. The appellate court also found that service of process was proper. 308 Ill. App. 3d 137. For reasons that follow, we affirm the judgment of the appellate court, which remanded the cause to the trial court for further proceedings.

BACKGROUND

On January 26, 1988, Sam Sarkissian (Sarkissian), as parent and guardian of Sonya Sarkissian, a minor, filed a personal injury action against the Chicago board of education (the Board) in the circuit court of Cook County. The complaint alleged that, on September 24, 1985, Sonya Sarkissian suffered an epileptic seizure while attending Armstrong public school. It was further alleged that the Board and its agents, although aware that Sonya suffered from epilepsy, failed to promptly summon or render appropriate medical assistance when the seizure occurred and, as a result, Sonya sustained serious and permanent injuries.
(footnote: 1)
 On February 1, 1988, a deputy sheriff delivered a copy of the complaint and summons, addressed to “the Chicago Board of Education,” to the Board’s corporate offices at 1819 West Pershing in Chicago. The summons and complaint were given to, and accepted by, the receptionist of the Board’s law department. The Board’s appellate counsel conceded during oral argument before this court that the complaint and summons were received by the receptionist and that she transmitted the documents to a Board attorney. The Board attorney, in turn, forwarded the papers to the Martin Boyer Company, which served at that time as the Board’s risk management company. It was the responsibility of the Martin Boyer Company to acquire outside counsel to defend the Board in personal injury matters. However, according to appellate counsel, the case “slipped through the cracks.” No one filed an appearance on behalf of the Board and the complaint was never answered.

Notice that plaintiff would be seeking a default judgment was sent to the Board on July 28, 1988, via certified mail. The Board’s time stamp appears on the certified mail receipt, showing that the Board received this notice on July 29, 1988. Still no action was taken by the Board. On August 29, 1988, an order of default was entered and, after prove-up on April 17, 1990, the trial court entered a $10 million default judgment in plaintiff’s favor and against the Board.

The record further reveals that on August 25, 1997, plaintiff petitioned to revive the default judgment. See 735 ILCS 5/12–108(a) (West 2000) (a judgment that is more than seven years old must be revived prior to enforcement). The Board received notice of the plaintiff’s revival petition on September 2, 1997. Notice of the revival petition was served on the Board in exactly the same manner as when the Board had been served with notice of plaintiff’s complaint–by leaving a copy of the petition and summons with the receptionist at the law department. On October 1, 1997, the Board filed a general appearance. Then, on November 5, 1997, the Board filed a motion to vacate the default judgment as void, claiming that under section 2–211 of the Code of Civil Procedure, a summons issued to the Board must be served on “the president or clerk or other officer corresponding thereto.” 735 ILCS 5/2–211 (West 2000). According to the Board, service did not conform with section 2–211 because the summons was not addressed to any specific individual and was left with a receptionist in the Board’s legal department, who was not designated by statute to receive service of process. Thus, the Board contended that the trial court never acquired personal jurisdiction over it and, as a result, the default judgment entered was void.

Plaintiff denied that process served on the Board did not satisfy the requirements of section 2–211. Plaintiff contended that the Board’s attorney was an “officer” within the meaning of section 2–211 and that the attorney delegated authority to the receptionist to accept service of summons. In support, plaintiff submitted evidence that the Board’s long-standing custom, practice, and procedure was to have the receptionist of the Board’s legal department accept service of summons on behalf of the Board. Plaintiff submitted the deposition testimony of 12 witnesses, including Frank Gardner, who had been the Board’s president between 1987 and 1989; Patricia Whitten, who had been chief counsel for the Board from 1982 until 1990; and receptionists Nancy Faulk and Yolanda Chavez. The deposition testimony established that, for many years, the receptionist for the law department was a person authorized and designated to accept summons for the Board. No one could recall a time when service of summons on the Board via the receptionist of the law department had ever been contested as being improper.

The Board, however, contended that the receptionist of the law department accepted service of summons as an “accommodation” to the public and that strict compliance with the statute could be demanded by the Board. The Board contended that its failure to contest service in other cases meant only that the Board had waived proper service in those instances.

The trial court ruled in the Board’s favor, finding that the summons served on the Board in this case was not in conformity with section 2–211. The trial court vacated the default judgment, but authorized the issuance of an alias summons, addressed to the Board’s president. On July 28, 1998, the alias summons–like the original summons–was accepted by a receptionist in the Board’s law department. The Board has not filed an appearance in response to the alias summons.

Plaintiff appealed the trial court’s order vacating the default judgment. The Board, however, moved to dismiss the appeal, arguing that appellate jurisdiction was lacking. The Board contended that the order vacating the default judgment was not final and, therefore, not appealable. The motion to dismiss was taken with the case.

The appellate court denied the motion to dismiss, finding that the order was a final order, appealable pursuant to Supreme Court Rule 303. After rejecting the Board’s jurisdictional challenge, the appellate court ruled on the merits, finding that valid service on the Board had been effectuated in compliance with section 2–211. The appellate court reversed the order vacating the default judgment and remanded the cause for further proceedings. 308 Ill. App. 3d 137.

We allowed the Board’s petition for leave to appeal. 177 Ill. 2d R. 315(a). In addition, we granted leave to the Illinois Association of School Boards, the Illinois Association of Park Districts, the Illinois Library Association, and the Illinois Governmental Association of Pools to submit a joint brief as 
amici curiae
 in support of the Board. 155 Ill. 2d R. 345.

On January 29, 2001, this court filed an opinion, with two justices dissenting. The majority, exercising this court’s supervisory authority, reversed the judgment of the appellate court and affirmed the judgment of the circuit court. Thereafter, on July 6, 2001, plaintiff’s petition for rehearing was granted.

Now, having had the benefit of additional argument, we affirm the judgment of the appellate court, which remanded the cause to the circuit court for further proceedings.

ANALYSIS

Jurisdiction

It is necessary, at the outset, to identify the basis for this court’s exercise of jurisdiction over this appeal. The Board argues here, as it did before the appellate court, that a court of review has no jurisdiction over a trial court’s order vacating a default judgment on grounds that service of process was defective. Such orders, the Board claims, are not final orders and, thus, not appealable under our supreme court rules. Although the Board acknowledges that there is a split of authority on this issue, the Board cites to cases which support its position. See 
Nelson v. United Airlines, Inc.
, 243 Ill. App. 3d 795 (1993); 
Stankowicz v. Gonzalez
, 103 Ill. App. 3d 828 (1981); 
Alexander v. Burke
, 6 Ill. App. 3d 919 (1972); 
Mabion v. Olds
, 84 Ill. App. 2d 291 (1967).

Plaintiff disputes the Board’s claim that the order here is not final. Citing 
Cavanaugh v. Lansing Municipal Airport
, 288 Ill. App. 3d 239 (1997), and 
DiNardo v. Lamela
, 183 Ill. App. 3d 1098 (1989), plaintiff argues, and the appellate court below held, that an order vacating a default judgment for lack of proper service is, in essence, an order quashing service of process. Relying on this court’s opinion in 
Brauer Machine & Supply Co. v. Parkhill Truck Co.
, 383 Ill. 569 (1943), for the proposition that orders quashing service of process are final orders, plaintiff contends, “where the judgment is vacated due to improper service *** an appeal may be had from this order.” 
DiNardo
, 183 Ill. App. 3d at 1103.

While we agree with the appellate court that appellate jurisdiction exists in this case, we do so for different reasons. Section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 2000)) authorizes a party to seek relief from a final judgment, such as a default judgment, when brought more than 30 days after judgment has been entered. See 
Smith v. Airoom, Inc
., 114 Ill. 2d 209 (1986); 735 ILCS 5/2–1401(a) (West 2000). The filing of a section 2–1401 petition is considered a new proceeding, not a continuation of the old one. 735 ILCS 5/2–1401(b) (West 2000); 
Mitchell v. Fiat-Allis, Inc.
, 158 Ill. 2d 143, 149 (1994). Thus, a circuit court’s ruling on such a petition is deemed a final order and provision has been made for immediate review of these orders in Supreme Court Rule 304(b)(3), which states that appeal may be taken from “a judgment or order granting or denying any of the relief prayed in a petition under section 2–1401 of the Code of Civil Procedure” (155 Ill. 2d R. 304(b)(3)).

There are sound policy reasons for allowing review of orders granting relief from final judgments. Once a final judgment has been rendered, setting it aside is a matter of considerable significance. Moreover, it is impractical to subject parties to the time and expense of trial before it is known whether the circuit court’s decision to set aside an existing final judgment is proper.

In the present case, the Board filed a motion seeking relief from a final judgment, brought more than 30 days from the judgment’s entry. Regardless of the label which the Board gave to its motion, the motion was, in substance, a section 2–1401 motion. See 
Barnes v. Southern Ry. Co.
, 116 Ill. 2d 236 (1987) (the caption of a motion is not controlling; the character of the pleading is determined from its content, not its label); 
Padilla v. Vazquez
, 223 Ill. App. 3d 1018, (1991) (when analyzing a pleading, a court will look to the content of the pleading rather than its label). The order which plaintiff now seeks to have reviewed is the circuit court’s order granting the Board’s motion to vacate the final default judgment. In light of the foregoing, one might expect that, in the case at bar, there would be no question regarding appellate jurisdiction. However, the problem here stems from the fact that the Board’s motion was brought more than seven years after the default judgment was entered, on grounds that the judgment was void for lack of proper service. As a general rule, petitions brought pursuant to section 2–1401, to be legally sufficient, must be filed within two years of the order or judgment, the petitioner must allege a meritorious defense to the original action, and the petitioner must show that the petition was brought with due diligence. 735 ILCS 5/2–1401(b), (c) (West 2000); 
Airoom
, 114 Ill. 2d at 221-22.

It is undisputed that, as a general matter, the Board had the right to challenge the default judgment on voidness grounds in the circuit court, for it is well settled that “[a] judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void, and may be attacked at any time or in any court, either directly or collaterally.” 
Barnard v. Michael
, 392 Ill. 130, 135 (1945). The controversy, however, is over the proper labeling of the motion. The appellate court in 
Mabion
, 
Alexander
, 
Stankowicz
 and 
Nelson
 did not recognize petitions seeking to vacate void judgments as petitions for relief from judgment brought pursuant to section 2–1401 of the Code of Civil Procedure (formerly section 72 of the Civil Practice Act). These courts interpreted the language contained in paragraph (f) of section 2–1401 (formerly section 72(6) of the Civil Practice Act) as excluding motions brought on voidness grounds from the purview of section 2–1401.

Not all appellate court panels have reached the same conclusion. In 
Slates v. International House of Pancakes, Inc.
, 90 Ill. App. 3d 716, 723 (1980), the court said:

“We do not read this section, as some courts have, as removing motions attacking a void judgment from the ambit of section 72. [Citation.] Rather, we read section 72(6) as a clarification that section 72 provides a parallel mode for contesting void judgments.”

Until recently, this court had not spoken on the issue of whether motions attacking void judgments could be recognized as section 2–1401 petitions. However, in 
People v. Harvey
, 196 Ill. 2d 444, 454 (2001), four members of this court held that a motion to vacate a void judgment is properly designated a petition for relief from judgment under section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 2000)). Pursuant to 
Harvey
, paragraph (f) of section 2–1401, which provides, “Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief,” does not exclude, but merely differentiates, post-judgment petitions brought on voidness grounds from general section 2–1401 petitions. See 735 ILCS 5/1401(f) (West 2000). Under paragraph (f), the general rules pertaining to section 2–1401 petitions–that they must be filed within two years of the order or judgment, that the petitioner must allege a meritorious defense to the original action, and that the petitioner must show that the petition was brought with due diligence–do not apply. Petitions brought on voidness grounds need not be brought within the two-year time limitation. Further, the allegation that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence. 
People v. Harvey
, 196 Ill. 2d 444, 452 (2001) (McMorrow, J., specially concurring, joined by Freeman, J.).

We note, also, that paragraph (a) of section 2–1401 expressly abolishes all other common law means of attacking void judgments. It provides in pertinent part:

“Writs of error coram nobis and coram vobis, bills of review and bills in the nature of bills of review are abolished. 
All relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder
, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered.” (Emphasis added.) 735 ILCS 5/2–1401(a) (West 2000).

Moreover, nowhere else in the Code of Civil Procedure does the legislature make provision for the filing of a motion to challenge a judgment on voidness grounds.

Harvey
 recognized that petitions seeking relief from void judgments are section 2–1401 petitions. That being the case, it follows that any order granting or denying such relief is a final ruling, appealable pursuant to Supreme Court Rule 304(b)(3) (155 Ill. 2d R. 304(b)(3)).

In the present case, the Board petitioned for relief from a default judgment which had been entered more than seven years earlier. The Board alleged that the default judgment was void because the trial court lacked personal jurisdiction due to defective service of process. We conclude, pursuant to 
Harvey
, that the Board’s petition was one which sought post-judgment relief under section 2–1401 and could validly be brought outside the two-year limitations period. Also, there was no need for the Board to establish that it had acted with due diligence or to allege that a meritorious defense existed. Because the Board’s motion was a valid section 2–1401 motion, the trial court’s order granting the Board’s motion to vacate is, pursuant to Supreme Court Rule 304(b)(3), a final, appealable order.

Justice Thomas maintains in his dissent that a motion to vacate a judgment as void is not the same as a section 2–1401 petition. Slip op. at 32 (Thomas, J., dissenting, joined by Fitzgerald, J.). Accordingly, in the present case, Justice Thomas does not recognize the Board’s motion to vacate as a petition brought under section 2–1401. Instead, he distills the Board’s motion into a motion to quash service of process. Justice Thomas then reads 
Brauer Machine & Supply Co. v. Parkhill Truck Co.
, 383 Ill. 569 (1943), as standing for the proposition that the finality of an order quashing service of process turns on whether, under the facts of the particular case, the matter can move forward. He further concludes in his dissent that, in the present case, the matter is “on file and pending before the trial court” and that “we know with certainty that plaintiff will be able to proceed to the merits of the complaint.” Slip op. at 31-32 (Thomas, J., dissenting, joined by Fitzgerald, J.).

We observe that Justice Thomas’ characterization of the Board’s motion as one seeking to quash service of process ignores the fact that the circuit court’s order does more than quash service, it sets aside a final judgment. In addition, it seems clear that the procedural posture of this case contradicts Justice Thomas’ view that this case is capable of moving forward.

In the present case, when the circuit court vacated the default judgment that had been entered, it did not do so merely to allow the Board to interpose a defense. The circuit court did not recognize the Board’s appearance as a general appearance and require the Board to answer. Rather, the circuit court ordered plaintiff to serve an alias summons on the Board. We know from the record that an alias summons, addressed to the Board president, was delivered to the Board and, like the original summons, was accepted by a receptionist in the Board’s law department. The Board has not filed an appearance in response to the alias summons. Moreover, appellate counsel conceded at oral argument that, should this court reverse the appellate court judgment and plaintiff attempt to proceed to trial on the underlying action, service of process on the alias summons would be contested as improper and a Rule 103(b) motion seeking dismissal with prejudice would be filed. This is the reason that the Board, though it continues to contest appellate jurisdiction over this matter, suggests in its brief that, to “avoid undue delay,” this court should exercise its supervisory authority to reach the merits of the appeal and determine whether service of process was proper.

The general appearance filed by the Board on October 1, 1997, to which Justice Thomas’ dissent makes reference, was filed in response to plaintiff’s revival action, which the trial court dismissed when it vacated the default judgment as void. Thus, while, technically, the case may be pending in the circuit court, this court does 
not
 know with certainty that plaintiff will be able to proceed to the merits of the complaint. In fact, the opposite is true. Thus, even if Justice Thomas were correct in finding that 
Brauer
 did not intend to make all orders quashing service of process final and appealable orders, a matter on which we express no opinion, we observe that his rationale for finding the order here to be nonfinal is based on a misunderstanding of the posture of this case.

Service of Process

Having found no jurisdictional barrier, we address the merits of this appeal and review the trial court’s order vacating the default judgment that was entered against the Board. As noted earlier, the trial court’s vacatur order was premised on its finding that it had no jurisdiction to enter the default judgment because the Board was not served with summons in accordance with section 2–211 of the Code of Civil Procedure. See Ill. Rev. Stat. 1987, ch. 110, par. 2–211 (now codified at 735 ILCS 5/2–211 (West 2000)). Consequently, our review of the vacatur order requires that we determine whether summons served on the Board was in conformance with the requirements of that section.

Section 2–211 provides:

“In actions against public, municipal, governmental or quasi-municipal corporations, summons may be served by leaving a copy with the chairperson of the county board or county clerk in the case of a county, with the mayor or city clerk in the case of a city, with the president of the board of trustees or village clerk in the case of a village, with the supervisor or town clerk in the case of a town, and with the president or clerk or other officer corresponding thereto in the case of any other public, municipal, governmental or quasi-municipal corporation or body.” Ill. Rev. Stat. 1987, ch. 110, par. 2–211.

The Board is a quasi-municipal body. Thus, pursuant to statute, the Board is to be served by leaving a copy of the summons with “the president or clerk or other officer corresponding thereto.” 735 ILCS 5/2–211 (West 2000). Because the Board has a “president,” but no “clerk,” the parties, in attempting to establish compliance with the statute, have focused primarily on construing the language “other officer corresponding thereto.”

Plaintiff urges us to uphold the appellate court and find that “other officer corresponding thereto” is ambiguous, but may be interpreted to include the Board’s attorney, who then delegated her authority to accept service of process to her receptionist. The Board, however, argues that the term “other officer corresponding thereto,” properly construed, refers to the Board’s secretary.

As noted above, when the appellate court found that the Board’s attorney was an “other officer corresponding thereto,” it also held that the attorney could delegate the authority to accept service to the receptionist. This notion–that a person authorized by statute to accept service of process on behalf of a public entity may delegate that authority to another–was fundamental to the appellate court’s holding. However, the appellate court offered no legal support for this holding and the parties have not directly addressed the issue. In our view, however, it is essential to our resolution of the issues in this case to consider whether a person who is statutorily designated to accept service has the legal authority to delegate that duty to another, for it is of no moment whether the Board’s attorney is, as the appellate court held, an “other officer corresponding thereto” if the attorney had no legal authority to delegate her duty to accept service of process on the Board’s behalf. Similarly, if a person who is statutorily designated to accept process may legally delegate his or her authority to another, this court may consider whether, on the facts of this case, the president of the Board, who is specifically designated by statute as one who may accept service, delegated that authority, by custom and practice, to the receptionist. In that event, there would be no need to decide whether the attorney or the secretary is the “other officer corresponding thereto.” The issue of whether there was compliance with the statute would turn on whether there was sufficient evidence that the Board’s president had, by custom and practice, delegated the authority to accept process to the receptionist.

Due to its dispositive nature, we now turn to the question of whether a public entity may delegate authority to accept service of process to someone other than those persons designated by statute to accept service. We begin by acknowledging that the general and well-established rule is that strict compliance with statutes governing service of process on public entities is required. See 
Miller v. Town of Cicero
, 225 Ill. App. 3d 105, 110 (1992), relying on 
Amy v. Watertown
, 130 U.S. 301, 317, 32 L. Ed. 946, 952, 9 S. Ct. 530, 536 (1889). See also 56 Am. Jur. 2d 
Municipal Corporations
 §792, at 730-31 (2000); 17 McQuillin on Municipal Corporations §49.32, at 306 (3d rev. ed. 1993). Thus, it has generally been held that, where a statute specifies a particular officer upon whom service may be made, all others are excluded and, absent a general appearance or waiver, personal jurisdiction over the public entity will not attach unless the return of service shows that the person served is one who was statutorily authorized to accept service. See, 
e.g.
, 
Miller v. Town of Cicero
, 225 Ill. App. 3d 105, 110 (1992) (service, to be valid, had to be on the president of the board of trustees or village clerk). Because of the necessity for strict compliance, attempts to show that summons was served on an alternate person, based on the process server’s mistaken belief that the alternate had the authority to accept service or based on the process server’s mistaken belief that the alternate was the agent of the statutorily designated person, have been unavailing. In these instances, service has been held defective, even if the public body had actual notice of the suit. See
 Miller
, 225 Ill. App. 3d at 111 (and cases cited therein).

Notably, our review of the relevant case law has revealed no case which has squarely addressed the question of whether delegation of authority to accept service of process is permissible. However, we have found a few cases in which courts have held that service of process on someone other than the statutorily designated person was valid. In these instances, the evidence established that 
the public entity
, either expressly or by custom, adopted an alternate means of accepting service.

Such was the case in 
Avery v. O’Dwyer
, 201 Misc. 989, 110 N.Y.S.2d 569 (1952), 
mod. on other grounds
, 280 A.D. 766, 113 N.Y.S.2d 686 (1952), 
aff’d
, 305 N.Y. 658, 112 N.E.2d 428 (1953). In 
Avery
, the evidence showed that summons was left with a clerk in the office of the corporation counsel pursuant to a sign in the office directing that service of process be made at that place. Finding that service was validly made, the 
Avery
 court said:

“Civil Practice Act, section 228 provides that, if an action is brought against the City of New York, personal service of the summons must be made by delivering a copy within the State ‘to the mayor, comptroller, or counsel to the corporation.’ It is clear that service on the corporation counsel is expressly authorized by law and constitutes service on the city. Was there service on corporation counsel in this case? I think there was unquestionably service on him. Service was made at the place and in the manner prescribed by him, presumably for his convenience and to enable him to administer his office in an orderly fashion. To treat such service as ineffectual because summons was not handed to the corporation counsel himself would be inadmissible. The corporation counsel has set up a regular system and has invited litigants to abide by and rely on that system. To permit the corporation counsel at his whim to treat service made as directed by him as not being service on him would place the public at his mercy and lead to chaos. I therefore hold that the corporation counsel was served as required.” 
Avery
, 201 Misc. at 992, 110 N.Y.S.2d at 572.

Similarly, in 
Petersen v. Kansas City
, 324 Mo. 454, 23 S.W.2d 1045 (1930), the court found that notice delivered to an assistant city counselor constituted service on the mayor. Although substantial compliance with the notice provision was all that was required, the court did not rule on that basis. The court found that personal service on the mayor had been achieved. The evidence had established that the mayor did not expressly authorize the assistant to accept service on his behalf, but that,

“during the previous administration the mayor had referred all such notices to the city counselor, and had given him and his assistants authority to accept service and make acknowledgments thereof for and on behalf of the mayor. The practice so inaugurated was followed by succeeding administrations and had been in vogue 10 years at the time of the acknowledgment of service entered upon the paper in question.” 
Petersen
, 324 Mo. at 458, 23 S.W.2d at 1047.

In 
Crabtree v. City of Durham
, 136 N.C. 816, 819, 526 S.E.2d 503, 505 (2000), the court held that, “in order to establish valid service of process, the plaintiff is not precluded from offering his own proof in addition to the officer’s return of service.” The court concluded, after considering affidavits submitted into evidence, that service of process on the secretary of the city manager, at the direction of the city manager, constituted service on the city manager.

Other courts have recognized, in principle, that delegation of authority to accept process may be permitted. Although in these cases the courts found that the evidence was insufficient to show that an agency relationship was created, the cases suggest that service on a duly delegated agent would be valid. See 
White v. Berryman
, 187 W. Va. 323, 418 S.E.2d 917 (1992);
 Franz v. Board of Education of the Elwood Union Free School District
, 112 A.D.2d 934, 492 N.Y.S.2d 452 (1985);
 Meadowdale Neighborhood Committee v. City of Edmonds
, 27 Wash. App. 261, 616 P.2d 1257 (1980); 
Fillyow v. County of Westchester
, 33 Misc. 2d 501, 225 N.Y.S.2d 848 (1961).

We conclude from these cases that the authority to accept service of process may be delegated. Thus, when service of process on a public entity is governed by a statute that designates certain persons who may accept service on behalf of the public entity, a person so designated may, either expressly or by custom, validly delegate his or her authority to accept service of process to another. Clearly, there are sound policy reasons for allowing delegation. It is often the case that a public entity, such as the Board here, will receive numerous summons on a daily or weekly basis. As a practical matter, it may be too disruptive to the operation of the public entity to insist that all summons be handed directly to a designated officer. Also, a person designated by statute to accept service may not be readily available. For example, in the present case, the president of the Board, who 
was
 authorized by statute to accept service, was a volunteer who was rarely at the Board offices. It may be more efficient and convenient for the public entity to put into place a specific procedure for accepting service of process. That being the case, we find that an officer designated to accept summons on behalf of a public entity–such as the 
president
 of the Board here–may delegate the authority to accept service of process and that summons served on a duly delegated agent will constitute valid service under the statute.

 Having concluded that a public entity may authorize persons to accept service of process, we now turn to the case at bar. The evidence shows that the Board was served with summons in this matter on February 1, 1988. The return of service indicates that summons was delivered to “M. Chavez,” who, it was later shown, was a receptionist in the Board’s law department and not a statutorily designated person to receive service on behalf of the Board. The question we must decide, then, is whether plaintiff presented sufficient evidence to show that the Board 
president
, by custom and practice, delegated his authority to accept service on behalf of the Board to the receptionist. We find that plaintiff has met this burden.

 Plaintiff submitted the deposition testimony of Marvin Thomas, the Cook County sheriff who served the summons in this case. Thomas testified that, in 1988, the Board was located at 1819 West Pershing. Thomas testified that, although the corporate offices of the president and secretary were on the sixth floor, whenever he served summons on the Board in 1988, he was directed to deliver all summons to the receptionist for the law department, located on the fifth floor. Thomas explained that, on a daily basis, he never served fewer than 25 summons on the Board and sometimes served more than 100 summons at a time. He said that he was always directed to deliver the summons to the law department and he did not recall ever delivering summons to any other location within the Board.

Frank Gardner was a member of the Board from 1984 until 1989 and the Board’s president from 1987 until 1989. Gardner testified that he had never been served with process on behalf of the Board. Gardner also testified that he believed the vice-president or any other officer, in addition to anyone in the law department, could accept service for the Board and it would be considered valid service.

Norma Tsuhako testified that she was the assistant secretary to the Board from 1981 until 1993, at which time she became secretary–a position she still held at the time of her deposition in 1998. Tsuhako testified that, because the office of president was a volunteer position, the president was rarely in the office. It was her understanding that he authorized others, including the secretary of the Board and the receptionist on the sixth floor, to accept service of process on his behalf. Tsuhako testified that when she was assistant secretary, she was authorized to accept service in the secretary’s absence.

Thomas Corcoran was the secretary of the Board from 1981 to 1993. His deposition testimony established that, when he accepted service of process for the Board, he simply signed the receipt and sent the papers to the law department. Corcoran believed that the assistant secretary or the receptionist on the sixth floor had the authority to accept service.

Nancy Faulk, who had been a receptionist for the law department between 1984 and 1985, testified that when she began working as a receptionist she was told that it was her responsibility and duty to accept summons on behalf of the Board. Faulk also testified that she continued to work for the Board, in other positions, until 1997. Throughout that time it was the Board’s practice and procedure to have the receptionist for the law department accept summons for the Board.

Patricia Whitten, who was the Board’s chief attorney from 1982 until 1990, testified that from 1978 until 1990, and quite possibly much longer, the Board’s accepted practice was to authorize the receptionist for the law department to accept service of process on behalf of the Board. Whitten explained that she did not actually know if authority to accept process had been formally issued by the president, but that the practice had been in effect before she took office and she continued the practice throughout her tenure. Whitten also believed that she, as Board attorney, had the authority to determine the practice to be used and that she could authorize the receptionist to accept service of summons. Thus, she believed that Chavez, who had been the receptionist in 1987 and accepted summons in this case, was authorized to accept service of process on behalf of the Board. Significantly, Whitten admitted that, in this case, once Chavez had accepted process on behalf of the Board, the summons and complaint were actually transmitted to the proper authorities, in the normal course of business.

Plaintiff also submitted into evidence a list which identified more than 30 law suits which had been filed in the law division of the Cook County circuit court against the Board during 1986, 1987, and 1988. The listing showed that, in each case, service of summons was served on a receptionist for the law department and a general appearance was filed, acknowledging proper service.

We also take note that, in this case, when the Board was served with notice of the motion to revive judgment, process was served on the receptionist of the law department, whereupon the Board responded by filing a general appearance. Moreover, after the trial court granted the Board’s motion to vacate the default judgment and directed plaintiff to serve an alias summons on the Board, summons–addressed to the president of the Board–was delivered to and accepted by the receptionist of the law department.

Based on the evidence in this case, we find that plaintiff has established that service on the receptionist constituted service on the Board’s president. Although the president of the Board may not have given express consent to have the receptionist of the law department accept service of summons on his behalf in this particular instance, the evidence showed that there had been an established procedure–a custom and practice that had been in place for more than 20 years–whereby the receptionist of the law department was delegated the authority to accept service of summons on behalf of the president.

We emphasize that our finding of proper service here is not premised on the mere fact that the Board had actual knowledge of the suit. Nor is this a situation where the litigant, in attempting to serve the defendant, served an unauthorized person due to ignorance, mistake, or misplaced reliance on false representations of employees. Here the evidence was sufficient to show that the Board put into place an alternate means of providing for acceptance of service of process. We adopt the rationale of the court in 
Avery
 and hold that, where the evidence overwhelmingly established that the Board devised a regular system to accept service of summons and invited litigants to abide by and rely on that system, it is impermissible to allow the Board, at its whim, to treat service made as directed by it as improper service. To allow the Board to acknowledge that service was made in accord with a procedure which it put in place for the “accommodation” of the public, and then allow the Board to deny that proper service was made when the summons, though catalogued and processed in the appropriate fashion, later “fell through the cracks,” would be unjust.

For the reasons stated, we find that, based on the circumstances in this case, the receptionist of the law department was a duly delegated agent of the Board’s president for purposes of accepting service of process. Thus, summons served on the receptionist, in accord with the procedure put in place by the Board, constituted valid service on the Board, in compliance with section 2–211 of the Code of Civil Procedure.

CONCLUSION

The order of the circuit court of Cook County, granting the Board’s motion to vacate the default judgment entered against it and in favor of Sarkissian, was a final, appealable order reviewable by this court pursuant to Supreme Court Rule 304(b). In addition, this court holds that the trial court erred when it found that the default judgment was void for lack of proper service of process.

For the reasons stated, we affirm the judgment of the appellate court, reversing the order of the circuit court and remanding the cause for further proceedings.

Appellate court judgment affirmed.

JUSTICE FREEMAN, specially concurring:

Although I agree with my colleagues in the majority that the appellate court judgment must be affirmed, I write separately in order to make several observations regarding the procedural aspects of this case.

It is important to remember in this case that plaintiff possessed a final order of judgment from the circuit court of Cook County. Ordinarily, once a judgment is entered by a court and the judgment becomes final, the holder of the judgment can proceed on its enforcement. However, such was not the case for plaintiff due to the passage of time since the April 3, 1990, entry of default. Pursuant to section 12–108 of the Code of Civil Procedure, plaintiff had to revive the 1990 judgment in order to enforce it. See 735 ILCS 5/12–108 (West 2000) (prohibiting enforcement of judgments after the expiration of seven years). To that end, section 13–218 of the Code provides that judgments

“in a circuit court may be 
revived
 as provided by Section 2–1601 of this Act, within 20 years next after the date of such judgment and not after; and the provisions of Section 13–217 of this Act shall apply also to this Section.” (Emphasis added.) 735 ILCS 5/13–218 (West 2000).

Section 2–1601 of the Code provides that a party seeking to revive a judgment must file a petition to that effect. See 735 ILCS 5/2–1601 (West 2000). This statutory provision codifies the former writ of 
scire facias
, which was the procedure used at common law to revive a judgment. See 735 ILCS 5/2–1601 (West 2000). The revival proceeding is not a new action, but rather is a continuation of the suit in which the judgment was originally entered. 
Bank of Edwardsville v. Raffaelle
, 381 Ill. 486 (1942). A judgment of revival is binding until it is set aside. 23A Ill. L. & Prac. 
Judgments
 §479 (1979). The recognized effect of a revived judgment is to “revive the judgment just as it formerly existed and to reinvest it with the same attributes and conditions which originally belonged to it.” 
Bank of Eau Claire v. Reed
, 232 Ill. 238, 241 (1908).

This court has held that the only defense to an action for revival is either a denial of the existence of the judgment or proof of a subsequent satisfaction or discharge of the judgment. See 
Bank of Edwardsville
, 381 Ill. 2d at 489;
 Bank of Eau Claire
, 232 Ill. at 240; 
Dec v. Manning
, 248 Ill. App. 3d 341 (1993). These defenses must appear on the face of the record without references to any matters 
dehors
 the record. 
J.D. Court, Inc. v. Investors Unlimited, Inc.
, 81 Ill. App. 3d 131, 134 (1980).

In the present case, plaintiff filed the petition to revive judgment on August 25, 1997. The Board filed a general appearance in the revival action and moved to vacate the 1990 default judgment. In its motion to vacate, the Board contended that plaintiff had failed to serve the Board in accordance with section 2–211 of the Code of Civil Procedure. Discovery was conducted in the matter, and the parties briefed the issue. Evidence depositions were filed with the court, which ultimately found that the 1988 service had been done contrary to section 2–211. The circuit court, therefore, granted the Board’s motion to vacate and further ordered that an alias summons be served on the Board. It is that order from which plaintiff appealed.

In my view, the jurisdictional question that we are confronted with in this case arose because the circuit court did not follow the proper procedures in the revival proceedings that plaintiff had commenced. Rather than deny the existence of the judgment or prove its subsequent satisfaction, the Board in this case filed a motion to vacate the judgment, arguing that service of process in 1988 had been improper. In essence, the Board’s position was that the judgment could not be revived because service of process in 1988 had been improper. However, this type of defense necessarily goes to matters 
dehors
 the record. As such, it must be raised in a collateral attack on the judgment. See 
Bank of Eau Claire
, 232 Ill. at 240;
 Foreman v. Illinois Hair & Feather Co.
, 337 Ill. App. 147 (1949) (and cases cited therein). Thus, the Board’s service of process challenge was premature at that point. The circuit court should have granted plaintiff’s petition to revive the judgment before entertaining the Board’s collateral attack regarding the propriety of service.

 Had the circuit court properly revived the judgment–the effect of which would have been to reinvest the judgment with the same attributes and conditions which originally belonged to it–the circuit court would then have been able to review the Board’s motion to vacate the 1990 judgment within its proper procedural context. A void judgment, order, or decree may be attacked at any time or in any court either directly or collaterally, without any showing of diligence or meritorious defense. 
R.W. Sawant & Co. v. Allied Programs Corp.
, 111 Ill. 2d 304, 309 (1986).
(footnote: 2) The court could have then disposed of the Board’s motion to vacate, and its order would have been final and appealable for the reasons set forth in the court’s opinion.

Does the fact that the circuit court did not revive the judgment first 
before
 considering the Board’s motion to vacate make any kind of difference in this case other than an academic one? I believe it does. Within the context of a revival proceeding, any order entered by the circuit court in response to the Board’s motion to vacate would have been a final order because it would have conclusively established the rights of the parties in the 1988 suit. Had the court denied the Board’s motion, the only act that would have remained for plaintiff would have been the execution of the judgment. Had the court granted the Board’s motion, the 1990 judgment would have been set aside. According to the Illinois revival statute, in such a case, plaintiff would have had the right to commence an entirely new suit against the Board. See 735 ILCS 5/13–218 (West 2000) (referring to section 13–217 of the Code). In either event, the circuit court’s order would have been final and appealable because Rule 304(b) specifically allows an appeal from either the granting of or the denial of a section 2–1401 petition. The circuit court did not follow the proper procedure, but instead vacated the judgment and ordered an alias summons issued, thereby causing “plaintiff’s complaint [to] remain[ ] on file and pending before the trial court” as Justice Thomas’ dissent notes. Slip op. at 31 (Thomas, J., dissenting, joined by Fitzgerald, J.).

Normally, when the circuit court makes an error, the reviewing court will vacate the erroneous ruling and remand the matter for further proceedings. Although the circuit court did not first take the step of actually reviving the 1990 judgment, its ultimate ruling on the Board’s motion to vacate did serve to open the judgment. I therefore see no harm in treating this case as if the 1990 judgment had been revived and then was subsequently vacated by the court. The effect of the court’s order is to terminate with finality the 1990 action. See 
Brauer Machine & Supply Co. v. Parkhill Truck Co.
, 383 Ill. 569 (1943). The correctness of this position becomes clear when one views the case from a different angle–had the circuit court 
denied
 the Board’s motion and revived the 1990 judgment–there would be no question that the Board would have been entitled to an appeal.

In this respect, I must also point out my disagreement with  the contention made by Justice Thomas in dissent that “a motion to vacate a judgment as void is not the same as a section 2–1401 petition for relief from judgment.” Slip op. at 32 (Thomas, J., dissenting, joined by Fitzgerald, J.). The dissent does not enlighten us as to what it believes is the proper procedural vehicle by which a party is to bring forth a voidness challenge. The dissent appears to characterize the Board’s motion as one seeking to quash service of process, but as the court rightly counters, the Board’s motion does “more than quash service, it sets aside a final judgment.” Slip op. at 9.

Notwithstanding the above, even if one were to agree with the dissenting viewpoint that jurisdiction under Rule 304(b) is improper in this case, I do not believe that alone is the end of discussion. Interestingly enough, the Board, on appeal in this case, argues–not for dismissal on jurisdictional grounds–but for this court to exercise its supervisory authority in order to provide guidance to the parties in the interests of judicial economy. The facts of this case amply illustrate why it is important for this court to review the case on the merits. The issue here is whether the Board’s long-standing manner of accepting service of process is in compliance with the provisions set forth by the legislature in section 2–211. The record reveals, and the parties agree, that when plaintiff served defendant in the revival action, plaintiff did so in the exact manner as he did in 1988. Further, plaintiff served the alias summons on the Board (as ordered by the circuit court) in the exact manner as he did in 1988. The Board filed a general appearance in the revival action, but filed a special and limited appearance in the personal injury suit that is currently pending in the circuit court. At oral arguments heard in conjunction with our rehearing of this case on September 25, 2001, the attorney for the Board was asked by a member of the court whether, if plaintiff’s default should be vacated by this court, anything exists which would serve to preclude a trial on the merits. The attorney answered that the first motion that would be filed by the Board would be a motion a strike service. In response to yet another question from the bench, the Board’s attorney informed us that, in the pending case, no “in personam” jurisdiction has attached. It is clear to me, at least, the course that this litigation will take if this court does not address the issue–the propriety of the manner in which service of process was achieved will again be in issue. Therefore, Justice Thomas misses the mark entirely when he states that “we know with certainty that plaintiff will be able to proceed to the merits of that complaint, as, on October 1, 1997, the Board voluntarily submitted itself to the trial court’s jurisdiction by filing a general appearance. [Citation.] Thus, whether service was properly obtained in the first instance no longer is relevant. The trial court now possesses personal jurisdiction over the parties, and plaintiff’s action can move forward.” Slip op. at 31 (Thomas, J., dissenting, joined by Fitzgerald, J.).

In light of the above, the analysis should not end, as Justice Thomas suggests it should, just because one might believe that the circuit court’s order in this case was not final. I note that in this court’s opinion issued prior to our granting of rehearing, Justice Miller recognized that a decision of the merits in this case was appropriate because of, 
inter alia
, “the likelihood that the issue regarding proper service will be raised again on appeal if the present case is returned unresolved, to the circuit court.” Given the Board’s position, as explained to this court on rehearing, it would be more than a “likelihood” that the issue would be raised if this matter were returned to the trial court unresolved–it would be a certainty. One of the most striking aspects of this case is the fact that plaintiff, in the revival action, served the Board in the 
exact
 manner that the Board complains of with respect to the 1988 service of process and would, apparently, complain of again in the pending action if this case were returned to the circuit court. However, the Board did not seek to invalidate the revival service of process. It seems to me that the Board’s long-standing practice with respect to receiving service of process allows the Board to “pick and choose” when it will recognize service and when it will not. In order to effectuate valid service in cases such as this, our courts demand strict compliance with the statute. See 
Miller v. Town of Cicero
, 225 Ill. App. 3d 105 (1992). However, strict compliance is difficult to achieve under the procedures set up by the Board. Thus, even if Rule 304(b) did not allow for jurisdiction in this case, as the dissents believe, the invocation of our supervisory authority would be more than appropriate under the circumstances. Justice Thomas’ dissent does not address this argument and, for these reasons, its position that this court has “no choice” but to dismiss the appeal (slip op. at 34 (Thomas, J., dissenting, joined by Fitzgerald, J.)) does not persuade.

In my view, the court today rightfully avails itself of the opportunity that this case provides to bring needed clarity to the issue that is beneficial to not just the parties here, but in future cases as well.

JUSTICE FITZGERALD, dissenting:

I agree with Justice Thomas that the jurisdictional issue in this case is not answered by our decision in 
Harvey
 and, under the facts and circumstances of this case, appellate jurisdiction was lacking. Therefore, I join in his dissent. Even if I agreed with the majority, however, that review of this case was appropriate, I would nonetheless disagree with the majority’s analysis and disposition of the substantive issue–whether service in this case complied with section 2–211 of the Code of Civil Procedure (735 ILCS 5/2–211 (West 2000)).

The summons and complaint in this case were served on the receptionist in the Board’s law department. Section 2–211 requires, however, that a summons issued to the Board be served on its “president or clerk 
or other officer corresponding thereto
.” (Emphasis added.) 
735 ILCS 5/2–211 (West 2000). Because the Board has a president, but no clerk, the parties have attempted to identify the “other officer” that corresponds to a clerk. Plaintiff has maintained that the Board’s attorney constitutes an “officer” for purposes of section 2–211, and that the attorney delegated her authority to accept service to the receptionist. As set forth in its September 1999 opinion, the appellate court found the “other officer” language in section 2–211 patently ambiguous, ultimately agreeing with plaintiff’s position and holding that service in this case complied with the statute. 308 Ill. App. 3d 137, 149-52.

In February 2000, we allowed the Board’s petition for leave to appeal. 
Sarkissian v. Chicago Board of Education
, 187 Ill. 2d 591 (2000). The Board maintained that the appellate court misconstrued section 2–211 and that the other officer corresponding to a clerk is the Board’s secretary–not the Board’s attorney. The brief of 
amici curiae
 echoed the Board’s argument. In January 2001, this court issued an opinion which squarely addressed this issue. Guided by well-settled principles of statutory construction, a majority of this court held that the phrase “other officer corresponding thereto,” contained in section 2–211, was not ambiguous and that the Board’s secretary, who performs clerical and record-keeping functions, is the other officer who corresponds to the position of a clerk. We thus concluded that service was not accomplished in the manner prescribed by section 2–211.

Thereafter, plaintiff petitioned for rehearing, pressing his contention that the Board’s attorney is a “corresponding” officer for purposes of section 2–211. Four members of this court voted to allow plaintiff’s petition for rehearing, and the case was argued again at the September 2001 term of court. Consistent with the position set forth in his initial brief before this court and his rehearing petition, plaintiff identified the issue at oral argument as: “Who is this ‘other officer corresponding thereto’ as is set forth in section 2–211?”

As the protracted history of this case illustrates, the substantive issue on review has always been one of statutory interpretation focusing on the “other officer” language in section 2–211. Indeed, the majority opinion summed up the parties’ positions before this court as follows:

“Plaintiff urges us to uphold the appellate court and find that ‘other officer corresponding thereto’ is ambiguous, but may be interpreted to include the Board’s attorney, who then delegated her authority to accept service of process to her receptionist. The Board, however, argues that the term ‘other officer corresponding thereto,’ properly construed, refers to the Board’s secretary.” Slip op. at 11.

In light of the foregoing, I find it remarkable that the majority has decided this case without any reference to the “other officer” language in section 2–211 and without deciding the issue that has been debated before this court for over two years. Instead, the majority has based the outcome of this case on a newly identified delegation issue. Specifically, the majority has determined that a public entity, like the Board, may authorize persons to accept service of process, and that plaintiff met his “burden” of presenting “sufficient evidence to show that the Board 
president
, by custom and practice, delegated his authority to accept service on behalf of the Board to the receptionist.” (Emphasis in original.) Slip op. at 15. Plaintiff, however, never argued that the Board president had delegated his authority under section 2–211 to the law department’s receptionist. This was simply not the legal or factual basis on which plaintiff maintained that service was valid.

Additionally, the majority decision appears to be based on principles of equitable estoppel, even though, as noted in our earlier opinion in this case, plaintiff elected not to pursue any argument that the Board was estopped from challenging the sufficiency of service based on the Board’s past practices. Indeed, as the record demonstrates, plaintiff expressly withdrew and waived this argument.

Although plaintiff had argued estoppel in the appellate court, based on its holding, the appellate court did not consider this argument. Assuming that plaintiff would pursue his estoppel argument in this court, the Board, in its opening brief, presented a lengthy argument against application of estoppel principles in this case. The Board maintained that “[t]he circuit court properly found that principles of equitable estoppel did not provide a basis for plaintiff to disregard the requirements of section 2–211 or preclude the Board from requiring compliance with the statute.” Apparently deciding not to pursue an estoppel argument, plaintiff stated in his response brief before this court:

“Plaintiff hereby withdraws and waives any argument, assertion or pleading presented that Defendant (1) is estopped from asserting service of summons was invalid herein or (2) has waived the right to assert service of summons was invalid herein.”

Given plaintiff’s express withdrawal of his estoppel argument as a basis for affirming the appellate court, I find the majority’s reliance on estoppel principles troubling.

To be sure, the term “equitable estoppel” appears nowhere in the majority opinion. Nonetheless, the majority holds:

“[W]here the evidence overwhelmingly established that the Board devised a regular system to accept service of summons and invited litigants to abide by and rely on that system, it is impermissible to allow the Board, at its whim, to treat service made as directed by it as improper service. To allow the Board to acknowledge that service was made in accord with a procedure which it put in place for the ‘accommodation’ of the public, and then allow the Board to deny that proper service was made when the summons, though catalogued and processed in the appropriate fashion, later ‘fell through the cracks,’ would be unjust.” Slip op. at 17-18.

This is, at bottom, equitable estoppel. See 
Geddes v. Mill Creek Country Club, Inc.
, 196 Ill. 2d 302, 313-14 (2001) (discussing the elements of estoppel and acknowledging that “[a]lthough fraud is an essential element, it is sufficient that a fraudulent or unjust effect results from allowing another person to raise a claim inconsistent with his or her former declarations”).

Although the majority states that its decision was made after “having had the benefit of additional argument” (slip op. at 4), I am at a loss to discern what the possible “benefit” could have been since the parties’ arguments focused on an issue entirely different than the one the majority now finds dispositive. Rather than determining that plaintiff met an evidentiary burden in the trial court of which neither party was aware, and implicitly adopting an argument that plaintiff expressly withdrew, I would decide the issue that the parties actually briefed, argued, rebriefed and reargued–the issue this court considered in its earlier opinion.

As a final matter, I note my disagreement with the majority’s assertion that:

“[I]t is well settled that ‘[a] judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the 
inherent power
 to make or enter the particular order involved, is void, and may be attacked at any time or in any court, either directly or collaterally.’ “ (Emphasis added.) Slip op. at 6, quoting 
Barnard v. Michael
, 392 Ill. 130, 135 (1945).

This assertion is neither “well settled” nor accurate.

In 
Steinbrecher v. Steinbrecher
, 197 Ill. 2d 514 (2001), this court clarified that the “inherent power” requirement is a relic of our pre-1964 judicial system in which courts of limited jurisdiction looked to the statutes for their authority to act. Our circuit courts today, however, enjoy original jurisdiction of all justiciable matters. Ill. Const. 1970, art. VI, §9. The “inherent power” requirement is thus applicable only to administrative agencies, who are statutory creatures and powerless to act without statutory authority. 
Steinbrecher
, 197 Ill. 2d at 529-30; see also 
Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.
, 199 Ill. 2d 325 (2002) (discussing effects of 1964 amendments to the judicial article of the 1870 Illinois constitution). The inclusion of the “inherent power” language in the majority opinion is ill-advised in light of our recent holdings and will only serve to create confusion in future cases. It is, moreover, unnecessary to the majority opinion.

There are only two issues in this case: whether this court has jurisdiction over this appeal, and if so, whether the circuit court acquired personal jurisdiction over the Board in the underlying suit. The majority’s commentary on the circuit court’s so-called “inherent power” is completely irrelevant and immaterial to these issues.

For the foregoing reasons, I dissent.

JUSTICE THOMAS, also dissenting:

The law is well established that, unless specifically authorized by the rules of this court, the appellate court has no jurisdiction to review judgments, orders, or decrees that are not final. 
Department of Central Management Services v. American Federation of State, County and Municipal Employees
, 182 Ill. 2d 234, 238 (1998). Consequently, where the appellate court has considered the merits of a nonfinal order over which it lacked jurisdiction, this court must vacate that court’s judgment and dismiss the appeal. 
Department of Central Management Services
, 182 Ill. 2d at 238. An order or judgment is final if, on the issues presented in the pleadings, it “ascertains and fixes absolutely and finally the rights of the parties.” 
Department of Central Management Services
, 182 Ill. 2d at 238. Stated differently, a final order or judgment is one that “terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof.” 
R.W. Dunteman Co. v. C/G Enterprises, Inc.
, 181 Ill. 2d 153, 159 (1998).

The majority resolves the complicated jurisdictional question in this case by relying almost exclusively upon this court’s recent decision in 
People v. Harvey
, 196 Ill. 2d 444 (2001). Even a cursory inspection of 
Harvey
 reveals that the decision in no way relates to–let alone definitively settles–the question identified. Indeed, 
Harvey 
is not a default judgment case. Rather, it is post-conviction criminal matter in which the defendant filed a section 2–1401 petition attacking his extended-term prison sentence as void. And not surprisingly, that sentence was not handed down by default, but after a jury trial established defendant’s guilt beyond a reasonable doubt. 
Harvey
, 196 Ill. 2d at 446. Given the facts of 
Harvey
, one might wonder what in the world a discussion of the finality of an order vacating a civil default judgment is doing in there. The short answer is it’s not. For that discussion, we must look elsewhere. 

There simply is no bright line rule that an order vacating a judgment for lack of proper service is 
ipso facto
 final and appealable. Rather, whether such an order is final and appealable turns on the particular facts of the given case. More specifically, whether such an order is final–indeed, whether 
any
 order is final–turns on whether that order “ascertains and fixes absolutely and finally the rights of the parties.” 
Department of Central Management Services
, 182 Ill. 2d at 238. With respect to a motion to quash service, this is a fact-specific inquiry that will be answered differently in different cases.

For example, in 
Brauer Machine & Supply Co. v. Parkhill Truck Co.
, 383 Ill. 569 (1943), this court concluded that an order quashing service of summons on a foreign corporation was a final, appealable order. We reached this conclusion not because 
all
 such orders are final and appealable, but rather because, under the particular facts presented in 
Brauer
, the order effectively terminated the litigation on the merits. As the court explained:

“It is true, the order, in form, was only an order quashing the service of the summons. It was not an order dismissing the suit, nor was it in the form of a final judgment on the merits. Regardless of its form, however, it was a complete and final disposition of the case,
 based upon the conclusion the court had reached that appellee was not amenable to the service of process in the manner in which the summons was served. On that issue
 it was not only as effectual and conclusive but it was as final as any decision upon the merits. The result was the same.” (Emphasis added.) 
Brauer
, 383 Ill. at 577.

Some appellate court decisions have construed the foregoing language as a categorical statement that 
all
 orders quashing the service of summons are final and appealable. See, 
e.g.
, 
Cavanaugh v. Lansing Municipal Airport
, 288 Ill. App. 3d 239 (1997); 
DiNardo v. Lamela
, 183 Ill. App. 3d 1098 (1989); 
In re Marriage of Kelso
, 173 Ill. App. 3d 746 (1988); 
Connaughton v. Burke
, 46 Ill. App. 3d 602 (1977). These decisions misconstrue the holding in 
Brauer
. As the following passage 
demonstrates, the holding in 
Brauer
 was driven solely by the particular facts of that case:

“
The facts alleged in this case, which must be accepted as true, show that service could not be obtained in any other manner
. The order quashing the service was, therefore, as final and conclusive as any order which could have been entered.” (Emphasis added.) 
Brauer
, 383 Ill. at 578.

Brauer 
therefore does not stand for the proposition that 
every
 order quashing service is a final, appealable order. Rather, 
Brauer
 confirms that the character of an order depends on the circumstances of the case. In some instances, as in 
Brauer
, it is properly characterized as final and appealable. In other cases, however, it is not. See, 
e.g., Nelson v. United Airlines, Inc.
, 243 Ill. App. 3d 795, 799-800 (1993). Once again, the critical inquiry is whether, under the particular facts of a given case, the order quashing service “ascertains and fixes absolutely and finally the rights of the parties.” 
Department of Central Management Services
, 182 Ill. 2d at 238. 

Looking at the particular facts presented in this case, this court should easily conclude that the order vacating the $10 million default judgment for a lack of proper service is not final. First, plaintiff’s complaint remains on file and pending before the trial court. More importantly, 
and in stark contrast to 
Brauer
, we know with certainty that plaintiff will be able to proceed to the merits of that complaint, as, on October 1, 1997, the Board voluntarily submitted itself to the trial court’s jurisdiction by filing a general appearance. See 
State Bank of Lake Zurich v. Thill
, 113 Ill. 2d 294, 308 (court obtains personal jurisdiction upon filing of general appearance). Thus, whether service was properly obtained in the first instance no longer is relevant. The trial court now possesses personal jurisdiction over the parties, and plaintiff’s action can move forward.

Of course, as the Board correctly points out, the filing of a general appearance cannot retroactively validate a judgment that was entered in the absence of personal jurisdiction. See, 
e.g.
, 
In re Marriage of Verdung
, 126 Ill. 2d 542, 547 (1989); 
Christiansen v. Saylor
, 297 Ill. App. 3d 719, 723 (1998).
 Thus, if the trial court correctly concluded that the $10 million default judgment was void for a want of personal jurisdiction, that judgment remains void today, irrespective of the Board’s subsequent general appearance. However, the filing of a general appearance 
does
 constitute a submission to the trial court’s jurisdiction on a prospective basis. See 
J.C. Penney Co. v. West
, 114 Ill. App. 3d 644, 647 (1983); 
Sullivan v. Bach
, 100 Ill. App. 3d 1135, 1142 (1981). Had the Board wished to contest the trial court’s jurisdiction both at the time of the default judgment’s entry and in the future, the proper vehicle would have been a special and limited appearance. See
, e.g.
, 
Christiansen
, 297 Ill. App. 3d at 723 (“where a judgment has previously been entered against a party, there is no need to file a special and limited appearance to challenge past jurisdiction 
unless the party also wishes to contest the court’s prospective jurisdiction
” (emphasis added)). By instead filing a general appearance, the Board waived the receipt of proper service and submitted itself to the trial court’s jurisdiction going forward. This case therefore is very different from 
Brauer
, in which “the plaintiff could not proceed further” because “service could not be obtained in any other manner.” 
Brauer
, 383 Ill. at 578.

Because the order vacating the $10 million default judgment is not final, the appellate court had no jurisdiction to review that order absent specific authority from this court’s rules. 
Department of Central Management Services
, 182 Ill. 2d at 238. The majority asserts that such authority exists in Supreme Court Rule 304(b)(3) (155 Ill. 2d R. 304(b)(3)), which permits a direct appeal from orders granting relief under section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 2000)). Like 
Harvey
, Rule 304(b)(3) has no application to this case.

The Board’s motion to vacate the $10 million default judgment clearly is not a petition for relief from judgment under section 2–1401. It is well established that a motion to vacate a judgment as void is not the same as a section 2–1401 petition for relief from judgment. 
In re Estate of Steinfeld
, 158 Ill. 2d 1, 19 (1994); 
Nelson v. United Airlines, Inc.
, 243 Ill. App. 3d 795, 799 (1993). Indeed, section 2–1401 itself expressly recognizes that nothing set forth therein in any way limits a party’s right to seek relief from a void judgment through other means. 735 ILCS 5/2–1401(f) (West 2000). Thus, in 
Estate of Steinfeld
, the court held that, although filed within section 2–1401’s two-year limitations period, a motion to vacate an order as void was 
not
 a section 2–1401 petition because the motion (1) was confined to contesting the order as void, (2) did not invoke section 2–1401, and (3) did not seek equitable relief under section 2–1401. 
Estate of Steinfeld
, 158 Ill. 2d at 18-19. To be sure, a party challenging a void judgment may, for whatever reason, elect to proceed under section 2–1401 by specifically invoking that section in his or her petition. Such was the case in 
Harvey
. But 
Estate of Steinfeld
 teaches that a party challenging a void judgment may just as easily elect 
not
 to proceed under section 2–1401 by 
not
 
invoking that section in his or her pleading.

In this case, the Board clearly elected 
not
 to invoke section 2–1401 in its motion to vacate the $10 million default judgment. Just as in 
Estate of Steinfeld
, the motion filed by the Board (1) was confined to contesting the default judgment as void, (2) did not invoke section 2–1401, and (3) did not seek equitable relief under section 2–1401. Indeed, the Board’s motion explicitly states that it is not bound by the requirements of section 2–1401 because it is contesting the default judgment’s validity under one of the alternative methods alluded to in section 2–1401(f). Thus, as in 
Estate of Steinfeld
, the Board’s motion to vacate is not a section 2–1401 petition. Consequently, the trial court’s order granting that motion is not subject to immediate appeal under Rule 304(b)(3), and this court has no choice but to vacate the appellate court’s decision and dismiss this appeal. 
Department of Central Management Services
, 182 Ill. 2d at 238.

For the foregoing reasons, I dissent.

JUSTICE FITZGERALD joins in this dissent.

FOOTNOTES
1:     
1
Although the complaint did not state Sonya’s injuries with specificity, a later pleading indicates that Sonya suffered anoxic encephalopathy (brain damage), which caused her to become a spastic quadriplegic.

2:     
2
In this case, I view the Board’s motion to vacate as having been made pursuant to section 2–1401 of the Code. I do so because the Board’s motion refers specifically to subsection (f) of the statutory provision.