2025 IL App (1st) 232053

No. 1-23-2053

Opinion filed November 19, 2025

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| O. LAWTON WILKERSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 L 8472 |
| | ) | |
| PATRICIA M. MARTIN, | ) | Honorable |
| | ) | Anna Helen Democopoulos, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Martin and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    In this action alleging conversion of funds and financial exploitation of an elderly person,

plaintiff O. Lawton Wilkerson died while this litigation was pending. Counsel Puryear Law P.C.

(Puryear) moved the trial court for sanctions, including a default judgment, in favor of decedent

Wilkerson and against defendant Patricia M. Martin. The trial court granted the default judgment

sanction, and Martin petitioned the court to vacate it. The court denied her petition.

¶ 2    On appeal, Martin argues the trial court erred by denying her petition to vacate the default

judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401

(West 2022)) because (1) that judgment was void since the trial court's jurisdiction was suspended when the court entered that judgment where there was no proper party plaintiff at that time, (2) Martin was not required to allege a meritorious defense in her petition for section 2-1401 relief because the default judgment was void, (3) Puryear requested new, additional relief in the motion for sanctions and failed to properly serve it on Martin pursuant to Illinois Supreme Court Rule 105 (eff. Jan. 1, 2018), and (4) her alleged failure to comply with discovery did not warrant the severe sanction of entering a default judgment.

¶ 3    For the reasons that follow, we reverse the judgment of the circuit court.[1]

¶ 4                                    I. BACKGROUND

¶ 5    Before his death in 2023, Wilkerson was a retiree and had appointed Maceo R. Ellison, M.D., as his power of attorney for property. Defendant Patricia M. Martin is a retired judge from the circuit court of Cook County.

¶ 6    In November 2020, Dr. Ellison asked Martin to help manage Wilkerson's financial affairs, and Martin agreed. Wilkerson, who was about 94 years old, moved into a residential elder care facility in December 2020. Between December 2020 and April 2022, Martin gave Dr. Ellison periodic updates regarding the purported status of Wilkerson's assets. In April 2022, Martin falsely told Dr. Ellison that Wilkerson's investment account contained about $120,000 and his checking account contained about $50,000.

¶ 7    After that April 2022 update, the residential facility told Dr. Ellison that Wilkerson's account with the facility was in arrears. In July 2022, the residential facility sent an invoice

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

indicating that it had not been paid for Wilkerson's care for about two months and his account was $41,296.10 in arrears. In August 2022, the facility involuntarily terminated Wilkerson's residency there. Dr. Ellison made inquiries and learned that Wilkerson's investment and bank accounts had zero balances and had been closed. Dr. Ellison did not know where Wilkerson's pension fund and social security payments were being deposited. Dr. Ellison tried to contact Martin, but she made no response. Dr. Ellison retained Puryear to represent Wilkerson. Puryear had some communications with Martin, but she did not respond when Puryear asked for an accounting of her handling of Wilkerson's property and told her to repay any funds she had taken from Wilkerson.

¶ 8     In September 2022, Puryear sent Martin a letter demanding that she return all the funds she had transferred from Wilkerson's accounts. Then, Wilkerson filed a complaint against Martin, alleging her conversion of an unknown amount of funds belonging to him and her financial exploitation of him as an elderly person. The complaint included a request for nonspecified actual damages, treble damages, attorney fees, and court costs.

¶ 9     On October 19, 2022, Wilkerson filed an emergency motion for leave to conduct preservice discovery, alleging that Puryear had contacted Martin by text messaging and she failed to explain her actions and account for Wilkerson's funds. Wilkerson asked the court to issue subpoenas to his investment advisor, his bank, and the social security agency so he could obtain account history and transaction information and prevent further dissipation of his funds by Martin. Wilkerson stated that Martin had not yet been served despite previous efforts to do so. However, Martin had been communicating with Puryear about Wilkerson's claims against her by mail, e-mail and text

messaging. Accordingly, Wilkerson proposed to give Martin notice of this emergency motion by e-mail and text communications, which had already proved effective.

¶ 10    Also in October 2022, Wilkerson's case was transferred from the circuit court of Cook County's law division to its chancery division.

¶ 11    On November 9, 2022, Wilkerson filed an emergency motion to conduct pre-answer discovery. Wilkerson's reasons for this discovery were the same reasons he gave in his earlier emergency motion, but he added that Martin had been served with the complaint on October 20, 2022.

¶ 12    On November 10, 2022, the court held a hearing on Wilkerson's emergency motion. Martin did not appear. The court granted the emergency motion. Thereafter, the court continued this matter "for status on default" to December 6, 2022.

¶ 13    On December 5, 2022, Martin filed, *pro se*, an answer to the complaint in which she admitted that she had wrongfully assumed control over Wilkerson's property, had no authority to use his funds for any purpose other than for his benefit, and had intentionally deprived him of funds to which he was entitled. She answered only the conversion count of the complaint and denied only that she had breached her position of trust, concealed the status of Wilkerson's funds, willfully and maliciously converted his funds, and failed to account for the location and status of his funds.

¶ 14    Martin failed to appear at the December 6, 2022, hearing, and the court set the matter for status on January 17, 2023. On December 14, 2022, Wilkerson served discovery requests on Martin, returnable in January 2023. Martin did not appear at the January 17, 2023, status hearing, and the trial court set the matter for status on discovery on March 8, 2023.

¶ 15 On February 8, 2023, Wilkerson died. According to the record, which includes Puryear's billing records, Puryear learned of Wilkerson's death on February 8, 2023.

¶ 16 Martin did not appear on March 8, 2023, and the trial court set the matter for status on discovery on May 10, 2023. According to plaintiff's appellate brief, at this March 8, 2023, hearing, "[t]he trial court was made aware" of Wilkerson's death, but the court's order continuing status "does not reflect this."

¶ 17 On March 30, 2023, Puryear moved to compel discovery, arguing that Martin had ample time to retain counsel and respond to discovery, and had failed to keep her promises to fully repay Wilkerson's funds and provide her discovery responses after a 28-day extension. Puryear requested attorney fees and costs in bringing this motion as a sanction.

¶ 18 At the April 6, 2023, hearing on the motion to compel, Martin appeared in court *pro se*. The court continued the motion for a status hearing on April 27, 2023, and ordered Martin's attorney to file an appearance by April 20, 2023. The court also ordered Martin to refrain from transferring or using any funds originating from Wilkerson's accounts.

¶ 19 Neither Martin nor her attorney appeared on April 27, 2023. The court noted that Martin failed to comply with the court's order to have her counsel file an appearance by April 20, 2023. The court granted Puryear's motion to compel, finding that it was proper and Martin had failed to respond to it. The court ordered Martin to serve her discovery responses in 14 days and warned that her failure to do so might result in sanctions, including a default judgment entered against her, pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002). The court continued the matter to May 24, 2023, for discovery status.

¶ 20    On May 5, 2023, Puryear filed under seal a verified petition for rule to show cause for indirect civil contempt, alleging that Martin failed to obtain counsel by April 20, 2023, and failed to appear on April 27, 2023, for the hearing on the motion to compel. Furthermore, Puryear had received subpoenaed information that showed Martin had violated the court's April 6, 2023, order by sending the funds she had wire-transferred from Wilkerson's accounts to a cryptocurrency exchange and emptying the crypto wallets. Further, Puryear had contacted Martin, who did not deny the transactions or account for the funds. On May 11, 2023, the court set the petition for a hearing on May 24, 2023, and warned that the failure to appear may result in a finding of contempt and a court order for arrest.

¶ 21    On May 17, 2023, Puryear filed a motion for sanctions, including a default judgment, pursuant to Rule 219(c), based on Martin's noncompliance with discovery and the court's orders. The motion requested actual damages of $383,236.75, trebled to $1,149,710.25; $41,596.10, which was the amount third parties had paid for Wilkerson's care; attorney fees of $37,290, and $787.96 in court costs.

¶ 22    On May 24, 2023, Martin failed to appear at the continued hearings on the petition for rule to show cause and status on the motion to compel. The court issued two orders. Regarding the rule to show cause, the court ordered Martin to appear before the court on June 12, 2023, for further hearing. The order warned that Martin's failure to appear could result in her arrest. Regarding the motion to compel, the court noted Martin's failure to appear that day for the continued hearing on the status of the motion to compel, failure to comply with the court's order compelling discovery, and failure to respond to Puryear's motion for sanctions. The court also noted that it had warned Martin in open court and by written order that her further noncompliance with the court's order

compelling discovery may result in sanctions, including a default judgment. The court found that Martin's continued unresponsiveness violated the court's previous orders and discovery rules and, thus, sanctions were appropriate under Rule 219(c). Accordingly, the trial court entered a default judgment in favor of plaintiff and against Martin. The court ordered Martin to pay $1,149,710.25 in treble damages for the $383,236.75 she was shown to have taken from Wilkerson. The court also ordered Martin to pay $41,596.10 in actual damages, $37,290 in attorney fees, and $787.96 in court costs.

¶ 23    On June 12, 2023, the court issued an order following status on rule to show cause. Martin appeared *pro se*. The court granted Puryear leave to file a petition for adjudication of indirect criminal contempt; granted Puryear leave to inquire if the Cook County State's Attorney wished to prosecute this case, otherwise the court would appoint a special prosecutor to prosecute the charges; and set the matter for status on June 29, 2023.

¶ 24    On June 26, 2023, Puryear moved the court to continue the status hearing on the rule to show cause. Puryear explained that the court had provided counsel with guidance regarding the more appropriate criminal contempt procedure that the court wanted plaintiff to follow in this case. Puryear also explained its efforts to coordinate with law enforcement regarding next steps and included a copy of the complaint the Illinois Attorney Registration and Disciplinary Commission (ARDC) had issued against Martin on May 31, 2023, concerning her use of Wilkerson's funds and failure to cooperate with the ARDC's investigation. Puryear's motion also stated that the court had instructed that an estate should be opened and substituted as the plaintiff in this matter prior to any hearing on contempt. The motion also stated that decedent's representative continued to coordinate

with Puryear, but an estate had not yet been opened and more time would be needed for that to take place.

¶ 25 On June 27, 2023, Martin's counsel filed an appearance. The next day, Martin petitioned the court to vacate the default judgment. One day later, Martin amended her petition, arguing that (1) the court should not have granted the default judgment because Wilkerson's death suspended the court's jurisdiction until the appointment of a proper party plaintiff; (2) the default judgment was void because Puryear violated Rule 105 by failing to properly serve Martin with the motion for sanctions, which allegedly requested new, additional relief, and (3) no clear record of delay supported the trial court's severe sanction of default.

¶ 26 On June 29, 2023, the court heard Puryear's motion to continue the status hearing on the rule to show cause to July 31, 2023. The court noted the presence of Puryear, Martin, her counsel, and Assistant State's Attorney (ASA) Jeremy Bergstrom. ASA Bergstrom advised the court that the state's attorney's office intended to prosecute the indirect criminal contempt matter. Accordingly, the court granted Puryear's motion to continue and ordered the State to file a petition under a separate "ACC" case with the clerk of the court by July 31, 2023. The court also struck Martin's amended petition to vacate for failure to comply with the affidavit requirement of section 2-1401 of the Code. Thereafter, Martin, with leave of court, refiled her amended petition with her affidavit.

¶ 27 On July 31, 2023, Puryear filed a suggestion of death upon the record and motion to substitute Dr. Ellison, as independent executor of Wilkerson's estate, in place of Wilkerson. Attached to this document is a July 14, 2023, order admitting Wilkerson's will to probate and

appointing Dr. Ellison as the personal representative of Wilkerson's estate in case No. 23-P-3807. The record does not indicate that the trial court issued a decision on this motion to substitute.

¶ 28 Thereafter, plaintiff filed a response to Martin's petition to vacate the default judgment, arguing that (1) the trial court had the authority to enter its orders after Wilkerson's death and before the substitution of Dr. Ellison as executor in place of Wilkerson, (2) the motion for sanctions did not request relief beyond what Wilkerson had sought in his complaint, and (3) Martin showed contempt for the court's orders and failed to respond to discovery requests while continuing to move Wilkerson's funds in violation of the court's April 6, 2023, order. Thereafter, Martin filed her reply.

¶ 29 On October 5, 2023, Puryear, Martin, and her counsel were present before the court. The State also appeared regarding the contempt petition in case No. 23-MC-1600094. The State informed the court that the investigation in the case for adjudication of indirect criminal contempt would conclude shortly, and the trial court granted the State's continuance request and also continued the stay on the contempt proceedings. Then, the trial court held a hearing on Martin's petition to vacate, and the parties rested on their written arguments. The court gave an oral ruling denying that petition. First, the court rejected Martin's argument that Puryear violated Rule 105, finding that the motion for sanctions did not request relief beyond what Wilkerson had sought in his complaint. Second, the court rejected Martin's argument that the default judgment was void because it was issued while the court's jurisdiction was suspended, *i.e.*, after Wilkerson's death and before a proper party was substituted for him. The court stated that Martin's interpretation of the relevant statute was absurd and inequitable as a matter of public policy under the facts of this case where nobody could open an estate because no next-of-kin was involved, no assets remained

after Martin's wrongdoing, and the court could not appoint a public administrator until the court issued a judgment, which would then constitute an asset.

¶ 30    Third, the trial court took notice of the affidavit Martin had filed on June 26, 2023, with the ARDC in support of her motion to have her name stricken from the roll of attorneys pursuant to Illinois Supreme Court Rule 762(a) (eff. July 1, 2017) and in response to the ARDC administrator's statement of charges against her based on her conversion of Wilkerson's funds and failure to cooperate with the ARDC's investigation. In that affidavit, Martin averred that the ARDC administrator would present evidence that would clearly and convincingly establish the facts and conclusions of misconduct set forth in the statement of charges. Here, the trial court stated that Martin needed to present a meritorious defense for the court to consider her section 2-1401 petition for relief and concluded that her ARDC affidavit eliminated any meritorious defense she might claim.

¶ 31    Fourth, the trial court noted that the default judgment sanction stemmed from Martin's failure to comply with discovery orders and nothing in her section 2-1401 petition for relief indicated that she was willing to comply with the court's discovery orders now. The next day, the court issued a written order consistent with the court's oral ruling. Regarding Martin's argument that the default judgment was void for lack of jurisdiction, the court added that Martin's reading of the relevant statute "would allow a person in the Defendant's shoes to take advantage of an individual such as the Plaintiff and upon their death (where an estate cannot be readily substituted) claim that the Court lacks authority to proceed."

¶ 32    Martin timely appealed.

¶ 33                              II. ANALYSIS

¶ 34     Section 2-1401 of the Code allows a party to seek relief from a final judgment, including a default judgment, by filing a petition more than 30 days after judgment is entered. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 101-02 (2002); 735 ILCS 5/2-1401(a) (West 2022). A proceeding under section 2-1401, though filed in the same case in which the judgment was entered, is considered an independent and separate action and not a continuation of the underlying litigation. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Generally, petitions filed under this section must be filed within two years after entry of the judgment and allege the following: (1) due diligence in presenting the defense or claim, (2) due diligence in filing the petition, and (3) a meritorious defense. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). However, a party who files a petition for relief under section 2-1401(f) on the ground that the judgment is void need not comply with these procedural requirements. *Sarkissian*, 201 Ill. 2d at 104; 735 ILCS 5/2-1401(f) (West 2022) ("Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief."). Thus, petitions based on voidness grounds may be filed outside the two-year limitations period and need not allege a meritorious defense and due diligence. *Sarkissian*, 201 Ill. 2d at 104.

¶ 35     Martin argues that the trial court erred by denying her petition to vacate the default judgment sanction because the attorney-client relationship between plaintiff Wilkerson and Puryear terminated upon Wilkerson's death on February 8, 2023, at which point Puryear was required to obtain authorization from the decedent's personal representative in order to proceed. Puryear, however, failed to do so until well after the trial court had entered the default judgment

sanction against Martin on May 24, 2023. Moreover, Puryear failed to timely file the requisite motion under section 2-1008(b) of the Code (735 ILCS 5/2-1008(b) (West 2022)), asking the court to appoint a special representative for Wilkerson for the purpose of prosecuting the action. Specifically, Puryear did not file its motion to substitute Dr. Ellison for Wilkerson until July 31, 2023, about two months after the court had issued the default judgment sanction against Martin. Martin argues that, without a representative having been duly appointed by the trial court under section 2-1008(b) of the Code, the trial court's jurisdiction was suspended as of February 8, 2023. According to Martin, the default judgment against her is void because the trial court granted it while the court's jurisdiction was suspended. Martin also argues that the trial court erred by denying her petition to vacate because the court erroneously believed that she was required to plead a meritorious defense even though she was challenging the judgment as void.

¶ 36    Plaintiff argues that section 2-1008(b) of the Code is comprehensive in setting forth the procedure to be followed after the death of a party and does not state that the court's jurisdiction is suspended upon the death of a party. Plaintiff also argues that the decisions Martin cites to support the proposition that the trial court's jurisdiction was suspended are illogical and unsupported by concerns of public policy to the extent they suggest that an attorney cannot continue to pursue his client's wishes expressed during the client's life once the client dies. Plaintiff argues that "[t]o suggest that an estate must be substituted before the Court could take action in this case to potentially prevent the further obstruction or loss of funds by the Defendant is deeply unfair and antithetical to public policy concerns."

¶ 37    *De novo* review applies where, as here, a section 2-1401 petition raises a "purely legal challenge" to a final judgment. *Walters*, 2015 IL 117783, ¶ 47. Generally, the attorney-client

relationship terminates on the death of the client, and thereafter, the attorney must obtain authorization from the decedent's personal representative in order to pursue the interests of the decedent. *Clay v. Huntley*, 338 Ill. App. 3d 68, 76 (2003); see *Castaneda v. Ingram*, 2018 IL App (1st) 170065, ¶ 13 (attorney's representation of the estate administrator during her lifetime "did not give him the authority to act on behalf of the estate following her death"). In the absence of this authorization, the attorney cannot proceed because he no longer represents a party to the litigation. *Washington v. Caseyville Health Care Ass'n*, 284 Ill. App. 3d 97, 100 (1996). "An estate is not a natural or artificial person and it lacks the legal capacity to sue or be sued." *Castaneda*, 2018 IL App (1st) 170065, ¶ 13. "Therefore, any action must be brought by the executor or representative of the estate." *Id.*; see *In re Estate of Simmons*, 362 Ill. App. 3d 944, 946 (2005) ("the attorney-client relationship terminate[d] on the death of the client, and thereafter, the attorney must obtain authorization from the decedent's personal representative in order to pursue the interests of the decedent").

¶ 38    After Wilkerson's death, Puryear acted beyond its authority when it, *inter alia*, moved to compel discovery and thereafter moved for a default judgment as a sanction for Martin's failure to comply with the court's orders. See *Mitchell v. King*, 187 Ill. 452, 459 (1900) ("The employment of plaintiff's attorneys and their authority was revoked by the [plaintiff's] death ***."). Nevertheless, an attorney's unauthorized acts may be ratified. See *Condon & Cook, L.L.C. v. Mavrakis*, 2016 IL App (1st) 151923, ¶ 65 (a client ratifies the actions of his attorney by not repudiating the act once he had knowledge of them or by accepting the benefits of those acts). Section 84 of the second Restatement of Agency, in setting forth what acts can be ratified, provides: "(2) An act which, when done, the purported or intended principal could not have

authorized, he cannot ratify, except an act affirmed by a legal representative whose appointment relates back to or before the time of such act." Restatement (Second) of Agency § 84, at 213 (1958); see *Globe Accident Insurance Co. v. Gerisch*, 163 Ill. 625, 631 (1896) (Under the doctrine of relation, "the grant of letters of administration related back to the date of the intestate's death, and validated all acts which came within the scope of an administrator's authority, and which were, in their nature, beneficial to the estate."). Furthermore, comment b of section 84 states that "[t]he bringing or continuing of an action or a defense can be ratified unless *** a statute of limitations or other bar has accrued before the affirmance." Restatement (Second) of Agency § 84 cmt. b, at 215 (1958). Comment e of section 84 states: "*Ratification by executors and similar representatives*. An executor, administrator, assignee, trustee in bankruptcy, or other representative whose title, when appointed, relates back to an earlier time, can ratify acts which he could have authorized had he been appointed at such earlier time." (Emphasis in original.) Restatement (Second) of Agency § 84 cmt. e, at 217 (1958). In addition, illustration 12 of section 84, elaborates: "B dies. Purporting to act for the 'estate of B,' A contracts to buy goods from T. P is appointed administrator and affirms. There is a sale to P." Restatement (Second) of Agency § 84 illus. 12, at 217 (1958). While we do not condone Puryear's actions beyond its authority, the record indicates that Dr. Ellison, after his appointment as executor of Wilkerson's estate, may have ratified those actions by authorizing Puryear to proceed with Wilkerson's claim against Martin. See *Progress Printing Corp. v. Jane Byrne Political Committee*, 235 Ill. App. 3d 292, 310 (1992) ("[R]atification need not be express; it may be inferred from surrounding circumstances ***.").

¶ 39    The issue presented, however, is whether the trial court could enter the default judgment sanction after Wilkerson's death and before a proper party is substituted by order of the court upon

a motion. Illinois courts have held that the plaintiff's death suspends the trial court's jurisdiction until the court appoints a proper successor plaintiff. *Illinois State Treasurer v. Estate of Kormany*, 2019 IL App (1st) 180644WC, ¶ 2; *Voga v. Voga*, 376 Ill. App. 3d 1075, 1079 (2007); *Washington*, 284 Ill. App. 3d at 100-01. In *Harris v. Chicago Title & Trust Co.*, 338 Ill. 245, 264-65 (1930), the court stated that the defendant's death did not entirely destroy the circuit court's jurisdiction but, rather, suspended it until the defendant's proper representative, for the purposes of the suit, was made a party.

¶ 40    Section 2-1008(b) of the Code provides in relevant part the following procedure for substituting a party following the party's death.

"(b) Death. If a party to an action dies and the action is one which survives, the proper party or parties may be substituted by order of court upon motion as follows:

(1) If no petition for letters of office for the decedent's estate has been filed, the court may appoint a special representative for the deceased for the purpose of prosecuting the action. The appointment shall be on verified motion of any party who appears entitled to participate in the deceased's estate, reciting the names and last known addresses of all known heirs and the legatees and executor named in any will that has been filed. The court's determination that a person appears entitled to participate in the deceased's estate shall be solely for purposes of this Section and not determinative of rights in final disposition. Within 90 days after appointment, the special representative shall notify the heirs and legatees of the following information by mail: that an appointment had been made, the court in which the case was filed, the caption of the case, and a description of the nature of

the case. The special representative shall publish notice to unknown heirs and legatees as provided in the Probate Act of 1975 [755 ILCS 5/1-1 *et seq.* (West 2022)]. If a will is filed within 90 days after the appointment of the special representative, the same notice shall be given to any additional executors and legatees named in the will. At any time that an estate is opened with a representative other than the special representative, the court may upon motion substitute the representative for the special representative. \*\*\*

　　　\*\*\*

If a motion to substitute is not filed within 90 days after the death is suggested of record, the action may be dismissed as to the deceased party." 735 ILCS 5/2-1008(b) (West 2022).

¶ 41　Although Puryear failed to obtain a court order substituting Dr. Ellison for Wilkerson as the plaintiff before the court issued the default judgment against Martin, that failure does not render the default judgment void. In *Mitchell*, 187 Ill. at 455, the plaintiff had not accomplished service on the defendant before the plaintiff died on February 19, 1898. Although the plaintiff's counsel knew of the plaintiff's death, it was not suggested of record nor was the executrix substituted as the proper plaintiff. *Id.* On August 5, 1898, a summons was taken out in the plaintiff's name and served on the defendant on August 18, 1898. *Id.* at 455-56. On October 8, 1898, the executrix of the plaintiff's estate appeared and suggested the plaintiff's death upon the record, and the cause proceeded in the name of the executrix. *Id.* at 456. Thereupon, the defendant, who had not appeared, was defaulted and a judgment was entered for the plaintiff. *Id.* On November 21, 1898, the defendant appeared and moved the court to vacate the judgment. *Id.* The trial court overruled

the defendant's motion, but the appellate court reversed and remanded with directions to vacate the judgment. *Id.*

¶ 42    The supreme court affirmed the appellate court, stating that the trial court had not acquired jurisdiction of the defendant at the time of the plaintiff's death. *Id.* at 459, 462. The supreme court stated that the statute, which provides for the substitution of a proper plaintiff when the sole plaintiff dies before a final judgment and the cause of action does not abate,

> "does not authorize the court to proceed without a plaintiff, and does not authorize any action to be taken until the death is suggested, and the legal representative substituted. In every suit there must always be a plaintiff, a defendant and a court. The employment of plaintiff's attorneys and their authority was revoked by the death, and the issue and service of process before the substitution of the executrix was unauthorized by law." *Id.* at 459.

¶ 43    *Mitchell* also stated that parties could petition the court to correct errors concerning courts proceeding without a proper plaintiff having been substituted for a deceased plaintiff. *Id.* at 462. Specifically, *Mitchell* cited *Claflin v. Dunne*, 129 Ill. 241 (1889), where

> "the court quoted with approval from Freeman on Judgments, ([§] 153,) as follows: 'Judgments for or against deceased persons *are not generally regarded as void* on that account, *** and while the court ought to cease to exercise its jurisdiction over a party when he dies, its failure to do so is an error to be corrected on appeal if the fact of the death appears upon the record, or by writ of error *coram nobis* if the fact must be shown *aliunde*.' " (Emphasis added.) *Mitchell*, 187 Ill. at 462.

¶ 44    We conclude that the default judgment rendered against Martin without the substitution of a proper plaintiff is not void but is voidable. See *id.*; see also *Cushing v. Greyhound Lines, Inc.*,

2012 IL App (1st) 100768, ¶ 103 ("A judgment is void (as opposed to voidable) only if the court that entered it lacked jurisdiction." (Internal quotation marks omitted.)); *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 27 ("A voidable judgment *** is an erroneous judgment entered by a court that possesses jurisdiction."). Here, the trial court had jurisdiction over Wilkerson when his complaint was filed and when it was served on Martin. The court also had jurisdiction over Martin, who was served with the complaint and filed an appearance and answer while Wilkerson was alive. The court's jurisdiction, however, was suspended after Wilkerson's death, and the record indicates that the court has not issued an order to substitute a proper plaintiff pursuant to section 2-1008(b) of the Code. Consequently, the court's default judgment against Martin, which was issued while the court's jurisdiction was suspended, is voidable.

¶ 45    Martin's section 2-1401 petition challenged the trial court's judgment as void and, thus, did not allege due diligence in presenting her defense, due diligence in filing her petition, and a meritorious defense. See *Smith*, 114 Ill. 2d at 220-21. Moreover, the trial court concluded that Martin's affidavit in the ARDC case against her eliminated any meritorious defense she might have to Wilkerson's claims against her because she averred that the ARDC administrator would present evidence that would clearly and convincingly establish the facts and conclusions of misconduct set forth in the statement of charges based on, *inter alia*, her conversion of Wilkerson's funds.

¶ 46    Nevertheless, Martin has presented the meritorious defense that the default judgment is invalid because the trial court issued that judgment (and even the order granting the motion to compel, upon which the default judgment is based) when the court's jurisdiction was suspended since no proper plaintiff was substituted by order of court upon a motion consistent with section

2-1008(b) of the Code. Moreover, Martin filed the petition to vacate only 35 days after the entry of the default judgment. Accordingly, Martin showed diligence in presenting the defense and in filing the petition. Based on these conclusions, we do not reach Martin's arguments challenging service of the motion for sanctions and the severity of the trial court's sanction.

¶ 47                                    III. CONCLUSION

¶ 48     For the foregoing reasons, we reverse the judgment of the circuit court denying Martin's 2-1401 petition to vacate the default judgment rendered against her.

¶ 49     Reversed.

***Wilkerson v. Martin*, 2025 IL App (1st) 232053**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-L-8472; the Hon. Anna Helen Democopoulos, Judge, presiding. |
| **Attorneys for Appellant:** | Michael I. Leonard and Matthew A. Chivari, of Leonard Trial Lawyers, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eric S. Mail, of Puryear Law P.C., of Davenport, Iowa, for appellee. |