2025 IL App (1st) 240948

First District
Third Division
November 19, 2025

No. 1-24-0948

|  |  |  |
|---|---|---|
| EBULON FINANCIAL GROUP, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| v. | ) | |
| | ) | No. 2022 M2 003221 |
| EWA POLITANSKA, | ) | |
| | ) | The Honorable |
| Defendant | ) | James Allegretti, |
| | ) | Judge Presiding. |
| (Kinga Politanska, | ) | |
| Appellee). | ) | |
| | ) | |

JUSTICE REYES delivered the judgment of the court, with opinion.
Presiding Justice Martin and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff Ebulon Financial Group, LLC, filed an eviction action against defendant Ewa Politanska (Ewa), seeking possession and money damages in connection with a single-family residence in Park Ridge, Illinois. After the circuit court entered an agreed eviction order, appellee Kinga Politanska (Kinga), Ewa's daughter, filed a motion to vacate the agreed order, contending that she was an occupant of the residence and was never named in the lawsuit or served. The circuit court granted her motion to vacate and also granted her subsequent motion seeking immediate possession of the property. Plaintiff appeals, and for the reasons that follow, we reverse.

¶ 2                                    BACKGROUND

¶ 3        On October 5, 2022, plaintiff filed an eviction complaint against Ewa and unknown occupants, seeking possession of a single-family residence in Park Ridge (the property) and alleging that Ewa owed $171,847.85 in past-due rent. Attached to the complaint was a lease naming Ewa as the tenant and plaintiff as the landlord. Also attached to the complaint was a five-day notice to "Ewa Politanska, Kinga Politanska and all unknown occupants" demanding full payment of the past-due rent, as well as an affidavit of service from plaintiff's managing member averring the delivery of the five-day notice to "Danila, a person above the age of thirteen (13) years of age, residing on or in charge of the above described premises."

¶ 4        The sheriff's office filed affidavits of service for Ewa and for "unknown occupants," averring that (1) Ewa had been served by substitute service on October 20, 2022, by leaving a copy of the summons and complaint at Ewa's usual place of abode with a family member or person residing there, 13 years or older, namely, "Danielle Marinova," and also mailing a copy of the summons to Ewa; and that (2) "unknown occupants" had been served on the same day by leaving a copy of the summons and complaint with "Danielle Marinova," "a person of the age of 13 or upwards occupying said premise[s]."

¶ 5        On November 14, 2022, Ewa filed a motion to quash service, claiming that Daniela Marinova, the person who accepted service, did not reside at the property, nor was there any evidence that the summons was mailed to the property. The circuit court granted Ewa's motion to quash service and, on its own motion, allowed service on defendant by posting an alias summons on the front door of the property after knocking on the door. The sheriff's office filed affidavits of service for both Ewa and "unknown occupants," averring service by posting on December 22, 2022.

¶ 6        On January 6, 2023, plaintiff and Ewa entered into a written settlement agreement, which provided that Ewa was to purchase the property. The agreement further provided that, in the event Ewa failed to close the transaction by March 31, 2023, Ewa, her guests, and all unknown occupants would be required to vacate the property by that date. In addition, if she failed to close the transaction, Ewa consented to the entry of an agreed order of possession—with no stay—as well as a money judgment in the amount of $276,370 less any payments made since the agreement was executed. If Ewa paid plaintiff $13,500 on or before March 1, 2023, the dates in the agreement would be extended to April 30, 2023. On the same day as the execution of the settlement agreement, the circuit court entered an agreed dismissal order dismissing the case, subject to reinstatement on the same terms.

¶ 7        On July 24, 2023, plaintiff filed a motion to reinstate the case and enter judgment in its favor. Plaintiff claimed that, even after obtaining several extensions, Ewa had failed to purchase the property or pay the full amounts due, and Ewa and "unknown occupants" had not vacated the premises. Consequently, plaintiff requested that the case be reinstated and the circuit court enter a judgment of possession and a money judgment in the amount of $288,493.68, representing the amount currently due and owing.

¶ 8        On September 21, 2023, the circuit court entered an agreed order vacating the January 6, 2023, dismissal order and entered a separate agreed order granting plaintiff possession of the property. The circuit court also continued the cause to October 13, 2023, to determine compliance with the terms of the settlement agreement and, in the event of a default under the agreement, to enter a money judgment. In the agreed eviction order, the circuit court ordered the defendants—Ewa and "unknown occupants"—to vacate the premises by October 10, 2023. The circuit court further ordered that "[i]f Defendants do not move out by the date and time

3

listed above, the Sheriff is ordered to evict the following Defendants: Ewa Politanska[,] Kinga Politanska (not a defendant)," and "unknown occupants."

¶ 9        On October 13, 2023, the circuit court entered an order which provided:

"1. A judgment is entered in favor of the plaintiff in the amount of $276[,]370 against Ewa Politanska plus costs.

2. Per the terms of the written settlement agreement if the defendant closes the transaction per the terms of the previously entered settlement agreement and written executed modification by October 31, 2023 and the payment of the October use and occupancy, plaintiff will not object to the vacation of the judgments.

3. This is a final order."

¶ 10       On October 23, 2023, Ewa filed an emergency motion to temporarily vacate the September 21, 2023, and October 13, 2023, orders to provide her the opportunity to obtain a mortgage in order to close on the real estate transaction. On October 24, 2023, the circuit court denied Ewa's motion.

¶ 11       On November 17, 2023, Kinga filed a "motion to vacate void orders and quash service." Kinga claimed that she had a possessory interest in the property and "has lived in the Property for years," and further claimed that plaintiff was aware of this fact, as evidenced by her being named in the five-day notice and in the September 21, 2023, eviction order. As such, Kinga contended that she was a known occupant of the property and was required to have been named and served in the action. Kinga maintained that the failure to do so rendered the eviction order void. Attached to her motion was her affidavit, in which she averred that she had been an occupant of the property since at least March 25, 2020, as well as a redacted copy of her driver's license showing the property as her address.

4

¶ 12    According to an affidavit filed by the sheriff's office, the eviction was effectuated on November 20, 2023. Kinga subsequently made an unauthorized entry onto the property, removing all items remaining inside, and was arrested and charged with criminal trespass.

¶ 13    In response to Kinga's motion, plaintiff contended that the motion was untimely, as all of the orders were over 30 days old, and the issues were rendered moot, as the eviction had already been effectuated and there was no money judgment against Kinga. In addition, plaintiff claimed that public records established that Kinga's address was a different one in Park Ridge, indicating that she was not an occupant of the property, and that she was well aware of the litigation from its infancy and so had ample opportunity to involve herself if she felt it necessary.

¶ 14    On January 30, 2024, the circuit court granted Kinga's motion, finding that she was a known occupant of the property. The circuit court further found that she was not made a proper party to the case, nor was she properly served. Consequently, the circuit court ordered that "[t]he orders entered against Kinga are held for naught" and she was "permitted to pursue any rights she may have as a result of this Court's ruling."

¶ 15    Plaintiff filed a motion to reconsider the circuit court's January 30, 2024, order. While that motion was pending, on April 1, 2024, Kinga filed a motion for immediate possession of the property, claiming that "Kinga has an absolute right to possession of the Real Estate as she has not been legally evicted."

¶ 16    On April 4, 2024, the circuit court denied plaintiff's motion to reconsider and granted Kinga's motion for immediate possession. This appeal follows.[1]

---

[1]We observe that, as a result of the circuit court's April 4, 2024, order, plaintiff filed a new action against Kinga for possession of the property. An appeal concerning that case is currently pending before this court in appeal No. 1-24-2345. Despite plaintiff's suggestion otherwise, we decline to look to the

¶ 17                                     ANALYSIS

¶ 18        On appeal, plaintiff contends that the circuit court erred in vacating the agreed eviction order and granting Kinga immediate possession of the property. As an initial matter, Kinga maintains that we lack appellate jurisdiction to consider plaintiff's claims, so we begin with a discussion of our jurisdiction. The question of whether we have jurisdiction over the instant appeal presents a question of law, which we review *de novo*. *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 25; *In re Marriage of Gutman*, 232 Ill. 2d 145, 150 (2008).

¶ 19                               *Appellate Jurisdiction*

¶ 20        In this case, plaintiff claims that we have jurisdiction over its claims as the circuit court's judgment of eviction represented a final order. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). We agree with plaintiff that the circuit court's September 21, 2023, and October 13, 2023, orders entering judgment in favor of plaintiff with respect to the possession of the property and money damages for unpaid rent would typically constitute final judgments that would be appealable under Rule 301. See *Royalty Farms, LLC v. Forest Preserve District of Cook County*, 2017 IL App (1st) 161409, ¶ 22 (appellate jurisdiction to consider eviction order); *Burnham Management Co. v. Davis*, 302 Ill. App. 3d 263, 269 (1998) (appellate jurisdiction to consider claims for possession and rent). In this case, however, the circuit court's September 21, 2023, order granting possession of the property to plaintiff was subsequently vacated with respect to Kinga, meaning that, as the circuit court noted in its January 30, 2024, order, "[t]he orders entered against Kinga are held for naught." Consequently, Rule 301 does not provide us with

record filed in that appeal, as it concerns events occurring subsequent to the entry of the orders at issue herein.

appellate jurisdiction over either the January 30, 2024, order or the subsequent April 4, 2024, order granting Kinga immediate possession of the property.

¶ 21    While we would be "well within [our] authority" to dismiss plaintiff's appeal for failure to cite the appropriate rule (*Gardner v. Mullins*, 234 Ill. 2d 503, 510 (2009)), we nevertheless find that we have appellate jurisdiction under two other supreme court rules. First, in response to plaintiff's argument that her motion to vacate the eviction orders was untimely, Kinga claimed that her motion should be interpreted as a petition pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)).[2] Illinois Supreme Court Rule 304(b)(3) (eff. Mar. 8, 2016) provides that "[a] judgment or order granting or denying any of the relief prayed in a petition under section 2-1401 of the Code" is appealable. Thus, we have jurisdiction to consider the propriety of the circuit court's January 30, 2024, order granting her motion to vacate the judgment. See *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill. 2d 489, 496-97 (1998) ("[W]hen a circuit court grants relief on a section 2-1401 petition, as the trial court did here, the appellate court has jurisdiction to review that decision under Rule 304(b)(3).").

¶ 22    While Kinga correctly claims that the vacatur of the eviction order means her rights to the property have not been adjudicated, the current nonfinality of the underlying action is irrelevant, as our supreme court has made clear that Rule 304(b)(3) renders appealable even an

---

[2]We observe that our supreme court has indicated that petitions seeking relief from void judgments filed more than 30 days after the entry of the judgment, such as in this case, "are section 2-1401 petitions." *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 105 (2002); see *Department of Healthcare & Family Services ex rel. Sanders v. Edwards*, 2022 IL App (1st) 210409, ¶ 43 ("A petition under section 2-1401 of the Code of Civil Procedure [citation] is the appropriate pleading to vacate a void judgment, such as the one here, purportedly entered upon invalid service of process, more than 30 days after that judgment was entered."). In addition, given that section 2-1401 petitions are, by definition, filed more than 30 days after the entry of the order being challenged, we find no merit to plaintiff's suggestion that Kinga's motion was untimely or that the circuit court lacked the ability to vacate the order if appropriate.

order that vacates a judgment and reopens the proceedings.[3] See *id.* at 509 (grant of a section 2-1401 petition to vacate the judgment and reinstate the action was immediately appealable); *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 101-02 (2002) (grant of a section 2-1401 petition to vacate default judgment based on improper service was immediately appealable). Kinga cannot claim both that her motion was a section 2-1401 petition and that the ruling on such a motion is nonappealable—the propriety of the circuit court's January 30, 2024, order vacating the judgment of possession is squarely before this court. See *S.C. Vaughan Oil Co.*, 181 Ill. 2d at 496 (the appeal is not based on the entry of the underlying order, but on the subsequent order vacating it and reinstating the cause of action).

¶ 23    In addition, as plaintiff observes, Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) allows for interlocutory appeals from trial court orders "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." An injunction is a " 'judicial process operating in personam and requiring [a] person to whom it is directed to do or refrain from doing a particular thing.' " *In re A Minor*, 127 Ill. 2d 247, 261 (1989) (quoting Black's Law Dictionary 705 (5th ed. 1983)). Our supreme court, however, has cautioned that not every interlocutory order is appealable, "even if it compels a party to do or not do a particular thing." *Id.* at 261-62. Instead, the relevant distinction is whether the circuit court's order may be characterized as ministerial or administrative—regulating the procedural details of the litigation—or is instead an order which affects the relationship of the parties in their everyday activities apart from the litigation. *Id.* at 262.

---

[3]We also observe that, although it is filed in the same proceeding, a section 2-1401 petition is considered to be the commencement of a new cause of action and is not a continuation of the proceeding in which the prior judgment was entered. See *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31; *Burnicka v. Marquette National Bank*, 88 Ill. 2d 527, 530 (1982). Thus, our supreme court has indicated that the ruling on the section 2-1401 petition is deemed a final order, which is immediately appealable. *Sarkissian*, 201 Ill. 2d at 102.

¶ 24  Here, the circuit court's April 4, 2024, order granting Kinga immediate possession of the property is in the nature of an injunction, as it ordered plaintiff to "immediately tender possession of the property" to Kinga. Indeed, as the eviction had already been effectuated, the order did not merely maintain the status quo but effectively required plaintiff, as the owner of the property, to permit a nonowner to occupy the premises, at least temporarily. See *In re Marriage of Paris*, 2021 IL App (1st) 200769-U, ¶ 20 (an order preventing a party from entering a residence in which he has an ownership interest and temporarily giving the other party exclusive possession of that residence is an appealable interlocutory injunctive order under Rule 307(a)(1)); see also *In re Marriage of Engst*, 2014 IL App (4th) 131078, ¶ 16 (finding order granting exclusive possession to be an appealable interlocutory injunctive order under Rule 307(a)(1)). As this order did not merely regulate the procedural details of the litigation but instead affected the relationship of the parties in their everyday activities, we find that we have jurisdiction to consider the propriety of the circuit court's April 4, 2024, order under Rule 307(a)(1).

¶ 25  *Applicable Law*

¶ 26  Although neither party discusses it, we observe that both section 2-1401 petitions and injunctive orders are subject to well-established law on review. Section 2-1401 "provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated 'after 30 days from the entry thereof.' " *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220 (1986) (quoting Ill. Rev. Stat. 1983, ch. 110, ¶ 2-1401(a)). A section 2-1401 petition may present either a legal or factual challenge to a final judgment or order. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. The nature of the challenge is "critical," as it dictates the proper standard of review on appeal. *Id.* Where, as here, a judgment

is challenged as void due to lack of personal jurisdiction stemming from defective service of process, the section 2-1401 petition presents a purely legal challenge, which we review *de novo*. See *id.* ¶ 47; see also *Sarkissian*, 201 Ill. 2d at 105.[4] In addition, the claim that the judgment is void negates the requirements otherwise applicable to section 2-1401 petitions—namely, allegations of a meritorious defense and due diligence—and also removes the time limit for filing the petition. *Sarkissian*, 201 Ill. 2d at 104.

¶ 27        With respect to the circuit court's order granting Kinga immediate possession of the property, we find that the order is most readily categorized as a preliminary injunction, as the parties and the circuit court contemplated further action on the underlying matter. The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits, and our supreme court has described it as "an extreme remedy which should be employed only in situations where an emergency exists and serious harm would result if the injunction is not issued." *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 365 (2001). Here, by placing Kinga into possession, the position she allegedly occupied prior to the eviction order, it appears that the circuit court intended to maintain the status quo pending the completion of the eviction process.[5] See *Pullem v. Evanston Young Men's Christian Ass'n*, 124 Ill. App. 3d 264, 268 (1984) (while courts will generally not change the possession of real property by preliminary injunction, they will do so when the possession "is but an interruption of the prior possession of the [party seeking the injunction], to which the latter is entitled" (emphasis and internal quotation marks omitted)).

---

[4]We also observe that a section 2-1401 petition alleging voidness due to failure to join a necessary party is similarly reviewed *de novo*. See *Black v. Black*, 2024 IL App (1st) 221667, ¶ 35.
[5]As we observed above, even if the circuit court placed the parties in the position they had been in prior to the entry of the eviction order, as a practical matter, the circuit court's actions *changed* the status quo, as all occupants had already been removed from the property at the time of the circuit court's order.

¶ 28 A party seeking a preliminary injunction is required to demonstrate (1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) a lack of an adequate remedy at law, and (4) a likelihood of success on the merits of the case. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). The decision to grant or deny a preliminary injunction is generally reviewed for an abuse of discretion. *Id.* at 62-63. Where, however, the decision as to injunctive relief depends on the resolution of a question of law, that question of law is reviewed *de novo*. See *id.* at 63. On appeal, the only question is "whether the party seeking the injunction has demonstrated a *prima facie* case that there is a fair question concerning the existence of the claimed rights." (Internal quotation marks omitted.) *Id.* at 62.

¶ 29 In this case, the circuit court's April 4, 2024, order granting Kinga immediate possession of the property relied on its finding that she had not been properly named as a party or served—the basis for its January 30, 2024, order vacating the judgment of possession. Thus, we begin our analysis by determining whether the circuit court properly granted Kinga's motion to vacate the order of possession.

¶ 30 *Motion to Vacate Order of Possession*

¶ 31 In her motion to vacate the order of possession, Kinga raised two arguments. First, she contended that, as a known occupant, she was a necessary party to the lawsuit who should have been named as a defendant. She further claimed that, as a result of the failure to name her in the lawsuit, she was not properly served with the summons and complaint and the circuit court therefore never obtained personal jurisdiction over her. On appeal, plaintiff contends that Kinga was, at most, an "unknown occupant" and was properly served as such.

¶ 32 Section 2-405(a) of the Code requires the joinder of necessary parties to a lawsuit. 735 ILCS 5/2-405(a) (West 2022). "A necessary party is a person or entity having a present,

11

substantial interest in the matter being litigated, not a mere expectance or future contingency, in whose absence a complete resolution of a matter in controversy cannot be achieved without affecting that interest." *American Freedom Insurance Co. v. Garcia*, 2021 IL App (1st) 200231, ¶ 36. A necessary party is one whose participation is required to (1) protect its interest in the subject matter of the controversy that would be materially affected by a judgment entered in its absence, (2) reach a decision protecting the interest of the parties already before the court, or (3) allow the court to completely resolve the controversy. *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 566 (2000). An order entered without jurisdiction over a necessary party is void as to that party. *Sullivan v. Merchants Property Insurance Co. of Indiana*, 68 Ill. App. 3d 260, 263 (1979).

¶ 33     To ensure that an order of possession may be immediately enforced against the entirety of the property, article IX of the Code (commonly known as the Eviction Act[6] (Act)) was amended in 2002 to permit a plaintiff to name "unknown occupants" as defendants in an eviction action. See Pub. Act 92-823 (eff. Aug. 21, 2002); 735 ILCS 5/9-107.5 (West 2022) (where "unknown occupants" are not named in the eviction order, such occupants are entitled to additional notice prior to being evicted from the premises); see also *Fairbanks Capital v. Coleman*, 352 Ill. App. 3d 550, 558 (2004) (observing that the Act generally authorizes execution of possession orders against generically named occupants). The Act, however, does not expressly define who is considered an "unknown occupant." More specifically, as relevant to the instant appeal, the Act does not expressly speak to the characterization of an occupant who is known to the landlord but is not on any lease instrument or rental agreement. Thus, the

---

[6]We note that the former Forcible Entry and Detainer Act was unofficially renamed the Eviction Act in 2018. See Pub. Act 100-0173 (eff. Jan. 1, 2018).

Act does not specify whether a complaint that names "unknown occupants" includes occupants whose identities are known but are strangers to the lease.

¶ 34      Somewhat surprisingly, there appears to be scant case law on the topic, either published or unpublished. Those cases, however, that involve similar issues focus on the question of whether the property owner is actually aware that the specific individual is an occupant of the property. See, *e.g.*, *Environmental Community Development Co. v. Pavlov*, 2023 IL App (2d) 210768-U, ¶¶ 20-21 (affidavit that five-day notice was delivered to " 'Branco Pavlov [*sic*], a person above the age of 13 years, residing on or in charge of the above described premises,' " did not make the landlord aware that Branco Dobobrov resided on the premises and he was therefore properly served as an unknown occupant); *Federal National Mortgage Ass'n v. Any & All Unknown Occupants*, 2024 IL App (1st) 231665-U, ¶¶ 20-24 (intervenor's affidavit and purported lease documentation did not establish that she was a tenant and, therefore, her motion to dismiss the eviction complaint based on lack of service was properly denied).

¶ 35      We additionally note that the Code has long had a general provision concerning "[u]nknown parties," which provides that, "[i]f in any action there are persons interested therein whose names are unknown, it shall be lawful to make them parties to the action by the name and description of unknown owners," so long as the party requesting the joinder files an affidavit averring that their names are unknown. 735 ILCS 5/2-413 (West 2022). At least one court has found that the affidavit requirement does not apply to proceedings under the Act, as the Act does not contain a statutory requirement that a plaintiff make any effort to ascertain the identity of an occupant to properly serve them. See *Environmental Community Development Co.*, 2023 IL App (2d) 210768-U, ¶ 26. This provision nevertheless supports an

interpretation of "unknown occupants," which focuses on the property owner's awareness of an individual with an interest in the property.

¶ 36        We observe, however, that the Act appears to draw a distinction between tenants—*i.e.*, those with a contractual right to possession of the property—and all others. Specifically, in section 9-104, which concerns a demand for possession under the Act, the statute provides, in relevant part, that the demand

> "may be made by delivering a copy thereof to the *tenant*, or by leaving such a copy with some person of the age of 13 years or upwards, residing on, or being in charge of, the premises; *** or if those in possession are *unknown occupants who are not parties to any written lease, rental agreement, or right to possession agreement for the premises*, then by delivering a copy of the notice, directed to 'unknown occupants', to the occupant or by leaving a copy of the notice with some person of the age of 13 years or upwards occupying the premises, or by posting a copy of the notice on the premises directed to 'unknown occupants'. " (Emphases added.) 735 ILCS 5/9-104 (West 2022).

This section appears to contemplate two relevant possibilities: (1) the individuals in question are tenants or (2) the individuals in question are "unknown occupants who are not parties to any written lease, rental agreement, or right to possession agreement for the premises" (*id.*).[7] Under this section, any individual occupying the property without some type of agreement would appear to be considered an "unknown occupant," as there is no separate provision for individuals who are known by the property owner to be occupying the property without any such agreement.

---

[7]The third possibility, not relevant in the instant case, is where no one is in actual possession of the premises. 735 ILCS 5/9-104 (West 2022).

¶ 37    In this case, it is undisputed that Kinga did not have a written lease, rental agreement, or right to possession agreement for the premises. Thus, section 9-104 suggests that Kinga would be considered an "unknown occupant" for purposes of the Act, even if plaintiff was aware of her presence. Even, however, if Kinga's status turned on plaintiff's awareness, we cannot find that the evidence established that plaintiff did, in fact, know that Kinga was occupying the property.

¶ 38    In support of her motion to vacate the eviction order, Kinga attached several documents as exhibits. First, she attached the five-day notice, which was addressed to "Ewa Politanska, Kinga Politanska and all unknown occupants," as well as the eviction order, which ordered the eviction of "Ewa Politanska, Kinga Politanska (not a defendant)," and unknown occupants. In addition, Kinga attached an affidavit in which she averred that she was an occupant of the property and had been so since at least March 25, 2020. She further averred that plaintiff was aware of her occupancy, pointing to the five-day notice and the eviction order. She also attached a copy of a driver's license, issued September 14, 2023, which listed the property as her address.[8]

¶ 39    In response, plaintiff disputed Kinga's occupancy. Plaintiff provided a warranty deed and property tax bill indicating that Kinga owned a different residence nearby, as well as documentation from the Secretary of State concerning a recently dissolved business she owned in which Kinga had listed the other address. Plaintiff also contended that Kinga had been fully aware of the litigation from its inception, yet had never previously sought to intervene, as would have been her right if she had an interest in the property. See 735 ILCS 5/2-408(a) (West

_____

[8]We observe that the driver's license attached to her motion was issued after negotiations to purchase the property had fallen through and plaintiff had filed its motion to reinstate the eviction judgment, but prior to the entry of the agreed eviction order which Kinga later sought to vacate.

2022). Kinga did not address any of these points in her reply in support of her motion to vacate, apart from arguing that actual notice of the litigation did not cure the jurisdictional defect.

¶ 40    From an examination of the record, there can be no dispute that Kinga was intimately involved in the litigation. She is the daughter of Ewa, the tenant, and the parties' communications demonstrate that she was regularly used as a conduit to reach Ewa. Indeed, many of the parties' e-mails refer to "Ewa/Kinga" taking particular actions. Thus, the record on appeal overwhelmingly establishes that plaintiff was fully aware of Kinga's existence. The record, however, is more sparse as to whether Kinga was an *occupant* of the property and, if so, if plaintiff was aware of that fact. Kinga's affidavit is conclusory and merely contains the self-serving claim that she was an occupant. See *Federal National Mortgage Ass'n*, 2024 IL App (1st) 231665-U, ¶ 23 (finding affidavit claiming tenancy to contain "nothing but bald, self-serving legal conclusions" that failed to support the affiant's claims). Similarly, her driver's license—which was issued after the relevant time period—does not shed any light on the matter. We also observe that Kinga does not claim to have paid any rent for her alleged occupancy, nor did she provide any evidence of bill payments or other indications of occupancy during the relevant time.

¶ 41    On the other hand, plaintiff has provided evidence that Kinga has owned a nearby residence for several years and had used that residence, at least for business purposes, through the time that the business was dissolved in November 2023—evidence that Kinga chose not to address in response to plaintiff's claims of nonoccupancy. While we agree with Kinga that actual knowledge cannot substitute for the statute's notice requirements, we also nevertheless find it highly relevant that Kinga chose not to involve herself in the proceedings until after the entry of the eviction order.

¶ 42        The only evidence that suggests that plaintiff was aware that Kinga may have been an occupant was her inclusion on the five-day notice and in the eviction order.[9] Given, however, her involvement throughout the proceedings, especially when communicating with Ewa, we cannot find that her inclusion in these instances evidences her occupation of the property or plaintiff's knowledge thereof. While they could support a finding that plaintiff was aware that Kinga had some possessory right of her own, apart from serving as her mother's conduit, her inclusion could just as easily represent another instance in which Kinga was listed in correspondence aimed at Ewa. Accordingly, as Kinga had no written possessory interest in the property, nor did the evidence establish her actual possession of the property, we find that Kinga was, at most, an "unknown occupant" under the Act and was not required to be separately named in the complaint.

¶ 43        We next consider Kinga's related claim as to the validity of service, which was the second point of error raised in her motion to vacate. The Act has requirements for service that depend on whether the individual served is a named defendant or is an "unknown occupant." Kinga's claims exclusively concerned her entitlement to service as a named defendant.[10] As discussed, however, Kinga was not entitled to be named as a defendant and was, at most, an "unknown occupant" for purposes of the Act. The record establishes that "unknown occupants" were served on several occasions during the course of the litigation and that such service was sufficient pursuant to the requirements of the Act. See 735 ILCS 5/9-107, 9-107.5 (West 2022)

---

[9]We note that the circuit court suggested that plaintiff's counsel inserted Kinga's name into the eviction order without the court's knowledge. While we cannot speak to any prior discussions between the parties and the court as to the contents of the order, the record on appeal indicates that both plaintiff's counsel and Ewa's counsel were aware of Kinga's inclusion in the order, with Ewa's counsel even making a specific modification to the proposed eviction order to indicate that she was "not a defendant."

[10]We also observe that Kinga's arguments relied on the general provisions concerning service under the Code, not the specific statutes governing service in eviction actions, which are set forth in the Act.

(setting forth methods of service on unknown occupants). Accordingly, Kinga was properly served in her capacity as an "unknown occupant."

¶ 44    In summary, Kinga was not required to be named in the complaint, nor did she receive improper service. Therefore, there was no basis for finding that the circuit court's September 21, 2023, order granting possession of the property to plaintiff was void. As such, the circuit court erred in granting Kinga's motion to vacate and in vacating the September 21, 2023, eviction order.

¶ 45    *Motion for Immediate Possession*

¶ 46    Our decision concerning the propriety of Kinga's motion to vacate is also dispositive of our analysis concerning plaintiff's challenge to the circuit court's April 4, 2024, order granting Kinga immediate possession. As noted, a party seeking a preliminary injunction is required to demonstrate (1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) a lack of an adequate remedy at law, and (4) a likelihood of success on the merits of the case. *Mohanty*, 225 Ill. 2d at 62. On appeal, the only question is "whether the party seeking the injunction has demonstrated a *prima facie* case that there is a fair question concerning the existence of the claimed rights." (Internal quotation marks omitted.) *Id*.

¶ 47    In this case, any rights Kinga had that were allegedly in need of protection stemmed from her possessory rights to the property. As discussed above, however, Kinga's rights were validly extinguished through the entry of the eviction order. Consequently, the circuit court abused its discretion in finding that Kinga was entitled to immediate possession of the property. See *id*. at 62-63 (the decision to grant or deny a preliminary injunction is generally reviewed for an

18

abuse of discretion, but where the decision as to injunctive relief depends on the resolution of a question of law, that question of law is reviewed *de novo*).

¶ 48                                          CONCLUSION

¶ 49        For the reasons set forth above, we reverse the circuit court's orders vacating the eviction order with respect to Kinga and granting her immediate possession of the property. Kinga was, at most, an "unknown occupant" for purposes of the Act and was properly named and served in that capacity.

¶ 50        Reversed.

*Ebulon Financial Group, LLC v. Politanska*, **2025 IL App (1st) 240948**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2022-M2-0003221; the Hon. James Allegretti, Judge, presiding. |
| **Attorneys for Appellant:** | Berton N. Ring, of Berton N. Ring, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Robert T. Hanlon, of Netzky Olswang Hanlon, LLC, of Chicago, for appellee. |